[No. 20059.  Department Two.  February 2, 1927.]

THOMAS CARSTENS et al., Appellants, v. WESTERN PIPE & STEEL COMPANY OF CALIFORNIA, Respondent.[1]

[1] NEGLIGENCE (3, 40)—FIRES—ACTION FOR DAMAGES—QUESTION FOR JURY. Whether a fire was due to negligence in the operation and maintenance of a furnace for treating wood pipe is a question for the jury, where there was evidence to the effect that it was necessary to maintain heat at a very high degree, that the furnace was not properly constructed, that fires had started from the furnace on previous occasions, and that the furnace was left without a watchman on a blustering windy night.

[2] LANDLORD AND TENANT (56-1)—PREMISES AND USE THEREOF—INJURY TO PREMISES—FIRES—NEGLIGENCE OF TENANT. A lease requiring the lessee to surrender the premises in as good condition as when possession was taken, "damage by the elements or fires excepted," has reference to accidental fires, and does not relieve the lessee from liability for a loss of or injury to buildings through fires caused by his own negligence.

[3] TRIAL (42-2)—MISCONDUCT OF COUNSEL—PRESENTATION OF EVIDENCE. Persisting in asking a question to which objection has been sustained will not require a new trial on the ground of prejudice through undue prominence given to the matter.

[1]Reported in 252 Pac. 939.

Appeal from an order of the superior court for King county, Gilliam, J., entered January 15, 1926, granting a new trial to defendant, after the rendition of a verdict in favor of the plaintiffs, in an action for damages. Reversed.

*Kerr, McCord & Ivey* and *Wm. Z Kerr,* for appellants.

*Peters & Powell* and *Robert W. Reid,* for respondent.

BRIDGES, J.—The lease which the plaintiffs gave the defendant, covering certain waterfront property in Seattle, contained this provision:

"At the expiration of the term hereof the said lessee [the defendant] will quit and surrender the said leased premises in as good state and condition as when possession is taken, damage by the elements or fire excepted."

While the defendant was in possession, there was a somewhat disastrous fire which either destroyed or damaged some of the buildings located on the leased land and some of the derricks, cranes and other like property which were on the wharf and went with the lease. This same fire also damaged certain adjoining buildings belonging to the plaintiffs, but which were not on the leased premises. The plaintiffs brought this suit against the defendant to recover their damage because of the fire and expressly based their cause of action on the alleged negligence of the defendant. The case was tried to a jury, and the court gave the following instruction, to which defendant excepted:

"You are instructed that the lease from the plaintiffs to the defendant provides 'At the expiration of the term hereof the said lessee (the defendant) will quit and surrender the said leased premises in as good state and condition as when possession is taken, dam-

ages by the elements or fire excepted.' I instruct you that this provision of the lease only exempts the defendant from damage to the premises due to accidental fires, and if you find that the fire in the present instance was caused through the negligence of the defendant, its servants and agents, as alleged in the complaint, and the said leased premises were not surrendered to the plaintiff at the end of the term in as good a state of repair and condition as they were when possession was delivered to the defendant, then said provision of the lease would not exempt the defendant from liability."

There was a verdict in favor of the plaintiffs for nine thousand dollars. The defendant moved for judgment notwithstanding the verdict, on the ground that the testimony failed to show any acts of negligence on its part which caused the fire, and at the same time moved for a new trial, based on most of the statutory grounds. The trial court refused the motion for judgment notwithstanding the verdict, but granted a new trial because, as stated in the order, of an erroneous instruction. It seems to be conceded that the instruction which the court thought was erroneous was the one which we have quoted. The plaintiffs have appealed from the order granting a new trial, and the defendant in this court not only upholds that order, but also contends that its motion for judgment notwithstanding the verdict should have been granted.

We will first dispose of the motion for judgment.

The respondent, defendant below, had a contract with the city of Seattle to manufacture and furnish to it a lot of large iron pipes for the construction of the Cedar river pipe line. It provided that the pipes should be specially treated with a preparation known as "sarco", which is an asphalt derivative. For this purpose the respondent installed on the leased premises a large iron kettle, commonly spoken of as the dip tank.

It was approximately forty feet long, six feet six inches in width, and about seven feet in depth. It was placed within a furnace made of concrete lined with fire brick. The top portion of the dip tank had flanges which rested on the top of the concrete furnace. The sarco preparation was put into the tank, and in order to use it for the purpose of coating the pipes it had to be brought to a heat of about three hundred seventy-five degrees. This preparation would burn at about five hundred seventy degrees, but would flash at about four hundred eighty degrees. Once brought to the proper heating point, it took the preparation several hours to materially cool. The oil which was used for heating purposes was kept in a tank some little distance from the furnace and was fed into the furnace by means of pipes. A way was provided near the bottom of the tank for turning the oil on and off. It was customary to keep up the fire and cook the sarco material during the night, in order to have it ready for use the next day. The defendant had one watchman on the premises at night, whose duty was to heat the sarco and look after the furnace and the other property. At about eleven o'clock on the night of the conflagration, the watchman started the fires under the kettle and kept them going until about five o'clock the following morning. At that time he thought the sarco was sufficiently heated, and testified that he turned off the heat, stayed around the kettle fifteen or twenty minutes and then went to the office on the premises, as he had been previously instructed to do, for the purpose of building a fire in the stove in order to warm the room. This office was some nine hundred feet from the furnace. Before he had gotten the fire started in the office stove, he observed that there was a fire around the tank. At first there was a great amount of smoke, and then flame. From the

office he could hear the sizzling of the sarco which was in the tank. He called the city fire department, but before the fire could be put out much damage had been done. The night was a blustering one and the wind was blowing quite strong. The tank and the furnace were surrounded and covered by a wooden building or shack, probably roofed with some kind of iron.

[1] The appellants charged negligence in the following particulars: That the defendant permitted a plank covered with drippings of asphalt to be laid and remain across the tank or upper portion of the furnace; that the tank was maintained in an open condition and was not sufficiently guarded; that the equipment for extinguishing any fire that might start in the tank was insufficient; and, in a general way, defendant was charged with negligently constructing and operating the tank and furnace.

While the testimony is not very specific as to just how the fire started or what caused it, we are convinced from a careful reading of the evidence that there was sufficient to take the case to the jury on the question of the negligent construction and operation of the furnace and the tank. The testimony is clear that the fire started at the furnace. When the watchman turned off the oil and left the tank, the sarco was at a heat of about three hundred fifty degrees to three hundred seventy-five degrees. The fire brick were red hot; there was testimony to the effect that the flange of the kettle which rested on the upper part of the concrete portion of the furnace did not fit securely, and that drippings of the sarco would go between the kettle flange and the inner wall of the furnace, and thus onto the fire brick and down into the fire pit. Under these circumstances, it seems to us it was for the jury to determine whether the furnace was properly constructed and operated,

whether it was reasonably safe, whether the watchman was negligent in leaving the furnace at the time he did, particularly on such a night as the one in question, whether there should not have been a watchman at the furnace at all times, whether it was negligence to have a wooden plank covered with sarco drippings located so near the furnace, and whether proper precautions had been taken by the defendant for putting out fires which might start. There was testimony to the effect that fire had started at the furnace on two or three previous occasions, and that the watchman had previously told the defendant that the furnace was not properly constructed and was more or less dangerous.

While the testimony with reference to negligence is not as satisfactory as could be wished, the jury and the trial court, before whom the witnesses appeared, were of the view that the respondent had been guilty of negligence. Under all the testimony and the circumstances, we do not feel justified in holding that the evidence as to negligence wholly failed.

[2] This brings us to the instruction which the trial court gave to the jury and which was based upon the provision in the lease which required the respondent to surrender the premises in as good condition as when it took possession, "damage by fire excepted." The real question involved is whether "damage by fire excepted" included fires which were the result of respondent's negligence. That the purpose of the parties was to relieve the lessee from any damage done by accidental fires, there cannot be any question. Expressions similar to that used in this lease have been in vogue for a great many years. It has been said by some of the authorities that, at common law, tenants were not liable for damage done by fires, whether accidental or caused by negligence. But later, it is said,

a statute was passed in England modifying to some extent the common law. Conveyancers at that period, being uncertain as to what the law was, began to place in leases expressions similar to that in question here.

The thing for us to do is to determine what the parties to the lease had in mind, when they provided that the leased property was to be surrendered in good condition, damage by fire excepted. Did that clause mean that the lessee was to be relieved from fires which were the result of its own negligence? We ought not to come to that conclusion, unless the lease definitely and certainly so expresses itself. It would be natural and customary for the lessee to want to escape liability for purely accidental fires, and for the lessors to be willing to grant that relief, but it would not be natural that the lessors would be willing to release the lessee from damages caused by its own active negligence. Such a concession would hardly be looked for in a contract between business men. If the parties intend such a contract, we would expect them to so state in clear terms. We think the doctrine of the case of *Price & Co. v. Union Lighterage Co.*, 6 B. R. C. 119, is quite correct when it says that when there is a clause in a contract which is "capable of two constructions, one of which will make it applicable where there is no negligence on the part of the carrier or his servants, and the other will make it applicable where there is such negligence, it requires special words to make the clause cover non-liability in case of negligence . . . That being so, the principle that to exempt the carrier from liability for the consequences of his negligence there must be words that make it clear that the parties intended that there should be such an exemption is applicable . . ., and the learned judge was right in holding that the

contract does not exempt the defendants from liability for their own negligence.''

Considerable criticism is made of the court's instruction which we have quoted, but we cannot see anything wrong with it. It would hardly have been proper to have left it for the jury to determine whether the respondent was to be relieved not only from the consequence of accidental fires, but also from fires caused by its negligence. It was the duty of the court to construe the contract. This instruction does nothing more than tell the jury that by its terms, if the damage was the result of an accidental fire, then the defendant would not be required to return the property in as good a condition as when it took possession, but if it was the result of the lessee's negligence, then it would not be relieved from that duty. In our opinion, not only was it proper to give such an instruction, but the one given correctly stated the law.

Considerable argument has been made in the briefs as to whether a lease which relieves the lessee from his own negligence with reference to fires would be against public policy, and therefore void and unenforcible. This question has been before the courts a good many times and it has been held that such a provision in a contract between private individuals with reference to private interests is not against public policy and may be enforced. *Santa Fe, Prescott & Phoenix R. Co. v. Grant Bros. Construction Co.,* 228 U. S. 177. But, from the view that we take of the contract here under consideration, the question suggested is not involved and we do not decide it.

Respondent seems to rely quite strongly on the cases of *Santa Fe, P. & P. R. Co. v. Grant Bros. Const. Co., supra, McCormick v. Shippy,* 124 Fed. 48; *Commercial Union Assurance Co. v. Foley Bros.,* 141 Minn. 258, 169

N. W. 793, and *Checkley v. Illinois Central R. Co.,* 257 Ill. 491, 100 N. E. 942, 1914A Ann. Cas. 1202, 44 L. R. A. (N. S.) 1127. In the last case cited the railroad company had leased to Checkley certain of its land for warehouse purposes. The warehouse was destroyed through the alleged negligence of the railroad company and damages were sought. The lease provided that

". . . the risks of all loss, injury, and damage by fire, however caused, and whether or not caused by the negligence of the lessor, its agents, or servants, being hereby assumed by the lessee. . . ."

The court held that this lease relieved the railroad company from damages caused by a fire resulting from its negligence. But that lease is very much broader in its terms than the one we are considering, and, indeed, seems to expressly state that the lessor shall not be liable for any damages whether caused by accident or its negligence. In the case of *Commercial Union Assurance Co. v. Foley Bros., supra,* the lease provided that the lessee would make no claim against the lessor

"for or on account of any loss or damage sustained by water or fire howsoever coming or being within said premises."

The court held that the lease included a fire caused by the negligence of the lessor. It will be observed that the lease there under consideration was much broader than the one we have here. In the case of *McCormick v. Shippy, supra,* a party chartered from the owner a yacht to be used on a pleasure trip. The contract provided that,

"The charterer shall assume no responsibility for loss or damage to the yacht," and "that, should the yacht be lost, hire paid in advance and not earned, . . . shall be returned to the charterer."

The court held that, under no circumstances, was the charterer to be liable for the loss of the vessel. This,

in our opinion, is the strongest case which the respond-
ent has cited in its favor,·but even there the contract
was broader than the one we have under consideration.
The facts under and the provisions in the contract un-
der consideration in the case of *Santa Fe, P. & P. R.
Co. v. Grant Bros. Const. Co., supra,* are too long and
complicated to here set them out, but while the court
there held that the contract relieved the railway com-
pany from its own negligence in certain respects, it
did as we are here trying to do, that is, arrive at the
intent of the parties after taking into consideration all
the circumstances under which the contract was made.
None of the foregoing cases is, in our judgment, con-
trary to the views we have previously expressed.

 ‐ The case of *Brophy v. Fairmont Creamery Co.,* 98°
Neb. 307, 152 N. W. 557, L. R. A. 1918A 367, was an
action for damages by a landlord against a tenant for
the negligent destruction by fire of leased premises.
It was held that the tenant was liable if the fire was
caused through his negligence, even though the lease
contained a provision that at the end of the term he
should yield possession "subject to loss by fire." The
case of *Price & Co. v. Union Lighterage Co., supra,*
is an instructive one and reasonably close to the point
involved here. The plaintiffs had put certain merchan-
dise aboard a barge which belonged to the defendant.
It was agreed that the defendant would "not be liable
for any loss of or damage to goods which can be covered
by insurance." Through the negligence of the defend-
ant, the barge was sunk and the merchandise lost. The
court held that the contract did not relieve the defend-
ant of damages resulting from its negligence. In the
case of *Van Wormer v. Crane,* 51 Mich. 363, 16 N. W.
686, 47 Am. Rep. 582, the lease provided that the lessee
should keep the premises in repair and deliver up the

same in good condition, "damages by the elements excepted." The court held that the purpose of this provision "was to excuse the lessees in cases where the damages from the causes mentioned had happened without their fault." See, also, *Jordan v. Welch*, 61 Wash. 569, 112 Pac. 656; 36 C. J. 201; 16 R. C. L. 783.

We think the learned trial court was right when it gave the instruction complained of, and that it was wrong when it granted a new trial in the belief that the instruction was erroneous.

[3] The respondent urges another ground for the granting of a new trial. It appears that, during the trial, appellants' counsel attempted to prove that the respondent had not obtained from the city fire marshal of Seattle a license to operate the furnace. When this question was first asked, the court sustained an objection. Counsel persisted in asking the same and other witnesses similar questions, and it is contended that, in so doing, the matter was given undue prominence and prejudiced the respondent before the jury. We cannot see any error in this regard. It is hardly necessary, we think, to discuss the question further.

The order of the court granting a new trial is reversed, and the cause remanded with directions to enter judgment on the verdict.

MACKINTOSH, C. J., PARKER, ASKREN, and TOLMAN, JJ., concur.