ITabt, J.,
dissenting. I am obliged to dissent from the majority opinion and the judgment in this case. I regret the length of this dissenting opinion but it seems necessary to express my viewpoint owing to the importance and intricacies of the problems.
The three parties — the lessor-insured, the lessee and the insurers — being circumstanced, legally related and interested in the implications of this action, let us take a look at the terms of the lease to which the lessor-insured and the lessee were parties to determine their intention and the expression of that intention in the lease itself.
The lease between Spang and Phil-Mar was entered into on April 14, 1948, to become effective May 1, 1948, for a period *90 of five years. The words of the surrender clause to be construed are: “That lessee will deliver up and surrender to the lessor possession of the premises hereby leased upon the expiration of this lease or its termination in any way, in as good condition and repair as the same shall be at the commencement of said term (loss by fire and ordinary wear and decay only excepted).” (Emphasis added.)
It is to be noted that the term, ‘ ‘ fire, ’ ’ is directly connected with and must be construed consistently with the associated words, “ordinary wear and tear,” and there is no indication in any part of the lease that the lessee should be relieved of its own negligence or that of its servants. In fact, all through the terms of the lease the contrary is indicated by express agreement upon the part of lessor and lessee.
The lease further provides that the lessee will “keep said premises in good repair * * * clean, safe and healthy condition ’ ’; that “lessee will use and occupy said premises and appurtenances in a careful, safe and proper manner, and will at lessee’s expense comply with the directions of the proper public officers as to the use, repair and maintenance thereof; and [that] lessee will not .allow said premises to be used for any purpose or in any way that will increase the rate of insurance thereon * # * and will not bring or suffer to be brought into or upon said premises any substance or force that will increase the hazard of fire in or on said premises.”
The lease further provides that, if any waste is committed or unnecessary damage done upon or to said premises, the lessor may at any time before the replacement or repair of such waste or damage, without notice, declare the said term ended, and enter into possession of said premises and sue for and recover all rents and damages accrued or accruing under the lease.
The lease further provides that, “if the said premises shall without fault or neglect on lessee’s part be destroyed or so injured by the elements or other cause as to be unfit for occupancy and such destruction or injury could reasonably be repaired within thirty (30) days from the * * * destruction or injury, then the lessee shall not be entitled to surrender possession of said premises * * * without the mutual consent of the parties.”
The record shows that the insurance coverage of the plaintiff was taken by the lessor on July 20, 1948, after the lease was *91 taken and the lessee was in possession. Each of the insurance policies accepted by Spang as the insxxred contains a provision whereby the insnrer has the right to be subrogated to the rights of the insured, pro tanto, in any cause of action that may inure to said insured for loss suffered by it.
The record also shows that, after the insurance in question was placed, the insurers made a survey of the property and the character of the business being carried on in the premises by the lessee and increased the insurance premiums on account of the increased hazards of the business, the insurance not to cover or permit negligent operation by the lessee or its servants, and under the terms of the lease these extra premiums were paid to Spang by Phil-Mar and by the former to the insurers. Phil-Mar, therefore, had knowledge of this insurance coverage and of the subrogation rights of the insurers before the fire destroying the premises occurred.
The fire occurred November 2, 1949, and the insurance settlements were made with Spang in January and February 1950. Under the lease Phil-Mar, as lessee, had deposited with Spang certain bonds valued at approximately $7,000 as security for rentals, and after the fire the return of these bonds and settlement of the respective claims of the lessor and lessee became the subject of negotiation between them. The record shows that on settlement the bonds were returned to the lessee, and it is stipulated by counsel that a settlement was made between the lessor and lessee after the greater portion of the insurance money had been paid to Spang, whereby the lessee paid the sum of $450 in settlement of claims against it, and the following release in writing was attached to the lease:
“Cleveland, Ohio, February 13, 1950.
‘ ‘ By mutual consent the within lease is hereby cancelled and both parties are mutually released from any and all obligations thereunder. ’ ’
It is stipulated by counsel also that, “at no time on or prior to February 33, 1950, did Phil-Mar have notice or knowledge that Spang received any payments from the insurance companies or that said insurance companies had received from Spang any subrogation rights against Phil-Mar. ’ ’
In view of all these provisions of the lease and the subsequent conduct of the lessor and lessee with reference thereto, l *92 submit it is inconceivable that the phrase in the lease as above quoted, “loss by fire and ordinary wear and decay only excepted,” could be or was interpreted or considered by the parties to mean that the lessee should be exempt from liability for any fire loss due to its negligent act (which negligent act is conceded).
Some claim is made that such exemption from liability is indicated by the fact that the lessee was to pay increased fire insurance premiums because of increased fire hazards of the business conducted in the premises. This clearly did not contemplate increased hazards by way of negligent operation but increased hazards in the character of the business carried on. I submit that any different contract providing that the premises might be negligently used would be of doubtful validity.
“Contracts exempting from liability for negligence are not favored by the law; they are strictly construed against the party relying on them, and clear and explicit language in the contract is required to absolve a person from such liability. Further, the rule is unqualifiedly laid down by some decisions that one cannot avoid liability for negligence by contract, or, at least as to liability to third persons, by a stipulation as to one’s legal status which in fact is not true.” 17 Corpus Juris Secundum, 644, Section 262. .See, also, annotation, 175 A. L. R., 18; 11 Ohio Jurisprudence (2d), 339, Section 101; 29 Ohio Jurisprudence, 390, Section 11.
There is another incident, in connection with the terms of the lease and the fact that fire insurance was to be carried on the buildings, which it seems to me negates any thought on the part of either the lessor or lessee that the latter was to be released from liability on account of fire negligently set or permitted by it. The parties to this lease knew that fire insurance was to be carried on the premises by the lessor and, under the law, must have known that a lessor of premises in the absence of express contract has a right of action against his lessee if the latter’s negligent act causes a fire that destroys the leased premises, and that an insurer who pays the loss is subrogated, as a matter of law, even in the absence of express contract, to the right of the lessor against the party negligently causing the loss by fire. It is conceded that if the owner or lessor in this case, at least in advance of any fire, released all its claims *93 against the party negligently causing the loss, the insurers were also precluded from asserting their right of subrogation against the wrongdoer. Under such circumstances, was the owner or lessor in position to collect and retain its insurance?
The courts have said that “an insured who, after collecting insurance for destruction of the insured property, releases the wrongdoer from liability in derogation of the interest of the insurer under its right of subrogation is liable in damages for any loss which he has caused the insurer.” 29 American Jurisprudence, 1008, Section 1346; Hamilton Fire Ins. Co. v. Greger, 246 N. Y., 162, 158 N. E. 60, 55 A. L. R., 921. See Powers v. Calvert Ins. Co., 216 S. C., 309, 57 S. E. (2d), 638, 16 A. L. R. (2d), 1261; Illinois Automobile Ins. Exchg. v. Braun, 280 Pa., 550, 124 A., 691, 36 A. L. R., 1262; annotation, 55 A. L. R., 926; 46 Corpus Juris Secundum, 176, Insurance, Section 1211. If in the instant case the lessor settled its claim for loss on account of fire negligently caused by the lessee and fully released the lessee without notice to and the consent of the insurers, the latter were thereby relieved of liability to the lessor under the insurance policies because their rights of subrogation were completely destroyed. Inter Insurance Exchange of Chicago Motor Club v. Andersen, 331 Ill. App., 250, 73 N. E. (2d), 12; Newcomb v. Cincinnati Ins. Co., 22 Ohio St., 382, 10 Am. Rep., 746; Weaver v. New Jersey Fidelity & Plate Glass Ins. Co., 56 Colo., 112, 136 P., 1180, 51 L. R. A. (N. S.), 414.
Of course, if an insurer has knowledge of the release of liability of a prospective wrongdoer who negligently causes a loss by fire of the property insured, or the insurer pays the loss after knowledge of the release, a different question might arise. However, there is no evidence on that subject in the instant case. See Runner v. Calvert Fire Ins. Co., 138 W. Va., 369, 76 S. E. (2d), 244, 44 A. L. R. (2d), 1075.
In view of the state of the law on this subject, presumably within the knowledge of the lessor and lessee in the instant case, it is inconceivable to think that they intended to enter into a contract of release in direct conflict with the lessor’s express sub-rogation agreement which would or might well invalidate the insurance or part of the insurance of the lessor; and it is my view that under all the terms of the lease there is no clear waiv *94 er of loss from fire due to the negligence of the lessee, and that the language of the lease does not show such a purpose.
The authorities are in conflict on this subject. The majority opinion cites and quotes from the case of General Mills, Inc., v. Goldman (1950), 184 F. (2d), 359. That case was decided by by the United States Court of Appeals (Eighth Circuit), a court of three members, one of whom, Judge Sanborn, dissented and wrote a vigorous opinion, in which he said:
“It seems to me that the covenant to surrender the premises in good condition, ‘loss by fire and ordinary wear excepted,’ reasonably may not be construed to relate to the lessee’s tort liability, but only to its contractual liability to make repair or rebuild in case of the destruction of the building by fire. Apparently the reason for inserting exceptions, such as those here involved, in surrender clauses of leases was to relieve a tenant, who had agreed to keep the premises in repair, from any contractual liability to repair or rebuild structures injured or destroyed by fire or from having to answer in damages measured by the reproduction cost of such structures.
i ( * # #
“The case of Wright v. Tileston, 60 Minn., 34, 37, 38, 61 N. W., 823, 824,1 think clearly indicates that a tenant’s tort liability for negligence and carelessness causing damage to leased premises is something quite apart from the tenant’s contractual liability to pay rent or make repairs, and that the exceptions contained in the conventional surrender clause of a lease do not exonerate the tenant from his tort liability, even though the damage is caused by one of the elements referred to.
“In 32 American Jurisprudence, Landlord and Tenant, Section 783, page 669, it is said: # * A tenant is, however, liable for injury to his landlord from the destruction by fire of a building on the demised premises caused proximately by the tenant’s negligence, even though the lease contains a provision that at the end of the term he shall yield possession “subject to loss by fire” ’; citing Brophy v. Fairmount Creamery Co., 98 Neb., 307, 152 N. W., 557, L. R. A. 1918A, 367, and Carstens v. Western Pipe & Steel Co., 142 Wash., 259, 252 P., 939. These cases unquestionably support the text.”
In the case of Brophy v. Fairmont Creamery Co., supra, a landlord brought an action for damages against the tenant for *95 the negligent destruction of the leased premises by fire. The court held that the tenant was liable if the fire was caused through his negligence, even though the lease contained a provision that at the end of the term he should yield possession “subject to loss by fire.”
In the case of Van Wormer v. Crane, 51 Mich., 363, 16 N. W., 686, 47 Am. Rep., 582, the lease provided that the lessees should keep the premises in repair and deliver up the same in good condition, ‘ ‘ damages by the elements excepted. ’ ’ The court held that the purpose of this provision “was to excuse the lessees in cases where the damag*es from the causes mentioned had happened without their fault.” See, also, Jordan v. Welch, 61 Wash., 569, 112 P., 656.
In the case of Carstens v. Western Pipe & Steel Co. of California, supra (142 Wash., 259), a lease provided that “at the expiration of the term hereof the said lessee [the defendant] will quit and surrender the said leased premises in as good state and condition as when possession is taken, damage by the elements or fire excepted.” Plaintiff, landlord, sued the lessee for loss of buildings damaged or destroyed by fire due to the latter’s negligence. There was a verdict and judgment in the trial court for the plaintiff. On appeal, the Supreme Court of Washington affirmed the judgment and held:
“A lease requiring the lessee to surrender the premises in as good condition as when possession was taken, ‘damage by the elements or fires excepted, ’ has reference to accidental fires, and does not relieve the lessees from liability for loss of or injury to buildings through fires caused by his own negligence.”
In the course of the opinion in that case, it was said:
“The thing for us to do is to determine what the parties to the lease had in mind, when they provided that the leased property was to be surrendered in good condition, damage by fire excepted. Did that clause mean that the lessee was to be relieved from fires which were the result of its own negligence? We ought not to come to that conclusion, unless the lease definitely and certainly so expresses itself. It would be natural and customary for the lessee to want to escape liability for purely accidental fires, and for the lessors to be willing to grant that relief, but it would not be natural that the lessors would be willing to release the lessee from damages caused by its own active neg *96 ligence. Such a concession would hardly be looked for in a contract between business men. If the parties intend such a contract, we would expect them to so state in clear terms.”
In the case of Cerny-Pickas & Co. v. C. R. John Co., 7 Ill. (2d), 393, 131 N. E. (2d), 100, the Supreme Court of Illinois in reversing the judgment of the Court of Appeals of the First District held that under a lease provision requiring the landlord to pay for fire insurance and requiring the tenant upon termination of the lease to surrender the premises to the landlord “in good condition and repair (loss by fire and ordinary wear excepted),” in the absence of anything to the contrary, the tenant is not liable for loss by fire resulting from his own negligence.
The court in that case, however, made no reference to the problem of insurance subrogation but discussed the matter as though the lessor was protected by insurance even though the subrogation rights of the insurer were nullified by the exoneration clause in the lease. The court conceded that the following named cases are to the contrary. Carstens v. Western Pipe & Steel Co., supra (142 Wash., 259); Morris v. Warner, 207 Cal., 498, 279 P., 152; and Winkler v. Appalachian Amusement Co., 238 N. C., 589, 79 S. E. (2d), 185.
In the Cerny-Pickas case Justice Klingbiel wrote a dissenting opinion, concurred in by Justice Maxwell. In the course of his opinion, Justice Klingbiel said:
“Does that clause mean that the lessee is to be relieved from liability for fire damage caused by its own negligence? We ought 'not to so hold unless the lease definitely and certainly provides therefor. Since injury by negligence commonly results in liability, relief from such consequence should be clearly agreed upon between the parties, and ambiguity should not leave in doubt the question of intention. ‘Whether an exception of liability for injury by fire includes a-fire caused by the tenant’s negligence depends on the intention of the parties, but, unless the exception clearly contemplates damage caused by the tenant’s negligence, it will not be construed to except liability for such injury.’ (51 Corpus Juris Secundum, Landlord and Tenant, Section 414.) Courts should not, because a more equitable result may seemingly be reached thereby, construe into a contract exculpatory provisions that do not specifically appear therein.
*97 “I cannot agree that a covenant to surrender premises in good condition ‘loss by fire and ordinary wear excepted’ may be reasonably construed to relate to the lessee’s tort liability. It concerns rather the lessee’s contractual liability to make repairs or rebuild in case of destruction by fire. The reason for inserting these common exceptions in surrender clauses of leases is apparently to relieve a tenant, who has agreed to keep the premises in repair, from a contractual liability to repair or rebuild structures damaged or destroyed by accidental fire. Appearing as they do in paragraphs relating to the upkeep and return of the property, such exceptions are not designed to relieve the lessee from tort liability. Had the parties intended to excuse the lessee from negligence in causing a fire or any other type of damage they would doubtless have said so in express terms. It is to be expected that a lessor would agree to negative any contractual duty on the part of the lessee to restore premises damaged by accidental fires. But it is not natural that a lessor would agree to release the lessee from liability for damage caused by its own negligence. Such terms would hardly be looked for in a contract between business men. The general rule is in accord with this common understanding. ’ ’
The case of Winkler v. Appalachian Amusement Co., supra (238 N. C., 589), was an action for damages caused by fire to a theater building leased by the plaintiff to the defendant, as the alleged result of defendant’s negligent operation of a popcorn machine therein. The lease contained a provision as follows:
“The lessees * * * shall, at their own cost and expense, make any and all repairs that may be necessary inside the portion of the building hereby demised, excepting in case of destruction or damage by fire or other casualty # *
The plaintiff lessor repaired the damage and brought suit against his lessee. At the close of plaintiff’s case the court directed a verdict for the defendant on the ground that the lessee was exonerated from claim of loss by fire under the terms of the lease. The plaintiff appealed. The Supreme Court, by unanimous vote, reversed the judgment of the lower court, Justice Parker writing the opinion. The court held, as stated in the S. E. headnotes:
“Every lease impliedly obligates lessee to use reasonable diligence to treat demised premises in such manner that no in *98 jury will be done thereto, but that estate may revert to lessor undeteriorated by lessee’s willful or negligent act, unless such obligation is excluded by operation of some express covenant or agreement. ’ ’
“A lessee is not liable to lessor for accidental damage to leased building by fire, but is liable if damage was caused by his negligence.”
“Contracts for exemption from liability for negligence are not favored by law and are strictly construed against parties asserting such exemptions.”
‘ ‘ A contract will never be interpreted as exempting a party from liability for negligence, in absence of clear and explicit words showing such intent of parties.”
“Provisions of theater building lease that lessees, at expiration of lease, would deliver and return possession of leased premises to lessor in as good order, repair and condition as at present, ordinary wear and tear and damage by fire excepted, and that lessees should make all necessary repairs inside building at their own expense, except in case of destruction or damage by fire, did not exempt lessees’ successor from liability for damage to building by fire caused by such successor’s actionable negligence.”
In view of the state of the authorities as herein reviewed, as well as on principle, my view is that the judgment of the Court of Appeals in the instant case should be reversed.