[No. 2558–3.   Division Three.   March 20, 1979.]

WILLIAM RIZZUTO, ET AL, *Respondents,* v. RON MORRIS, ET AL, *Appellants.*

952

*Short, Cressman & Cable* and *W. K. McInerney, Jr.,* for appellants.

*Turner, Stoeve, Gagliardi & Kennedy, William W. Goss,*

*Gustafson & Reynolds,* and *Larry D. Gustafson,* for respondents.

GREEN, C.J.—This case involves the lease of a building. Due to the negligence of the lessee's employee, the building was totally destroyed by fire. The lessor brought this action against the lessee to recover the value of the building, payments due under the lease after the fire, and costs for removal and cleanup of debris. From a judgment of $43,620, the lessee appeals.

Three issues are presented: In the circumstances of this case, did the court err when it held the lessee liable for (1) the value of the building destroyed by its negligence? (2) rent for the unexpired term of the lease, and (3) the costs of cleaning up after the fire? We reverse.

In October 1973, the Varchan corporation, d/b/a the Bag Shoppe, leased a building located on Division Street in Spokane from William Rizzuto and Joseph Shumaker for a term of 5 years. The building was constructed in 1927, and according to the lessee, was in poor condition when the parties entered into the lease. The owners performed some cosmetic work, but the lessee expressed a continuing concern about the poor wiring and the general structural decay.

The lessee used the building as a retail store for the sale of its pillow furniture until August 12, 1976, when a fire completely destroyed the structure. Since the lessors carried fire insurance on the property in the approximate amount of $30,000, they collected this sum from their insurer. Under the terms of the policy, the insurer had the right of subrogation against any party liable to the lessors for the damage. Since the fire started when the lessee's employee tossed a match into a waste paper basket after lighting his cigarette, the insurance company, suing in the name of its insured, claimed that the lessee was liable for the loss. The subrogation claim was merged in the complaint's general prayer for $93,000 in damages.

The lessee's position was that the following provision of the lease exculpated it from liability to the lessors for fire damage:

> At the expiration of said term, the lessee will quit and surrender these said premises in good state and condition as they now are (ordinary wear and damage by the elements or fire excepted).

At trial, Ron Morris, president of the lessee corporation, testified that he had discussed fire insurance with the lessors on two separate occasions following the lease of the building. One of these discussions took place after a small fire had occurred in a machine used in the lessee's business. Both times the lessors, who were contract purchasers of the building, told him that they carried fire insurance on the structure in the approximate amount of $30,000. The lessors never demanded that the lessee secure an additional fire insurance policy, and Mr. Morris stated that he understood that the owners' policy covered both the landlord and the tenant. At one of these meetings, Mr. Shumaker jestingly remarked that they ought to "let it burn" if the building caught fire. The lessors admitted they had discussed the possibility of a fire and the existence of insurance with Mr. Morris, but they maintained that they never implied that their coverage was also for the benefit of the lessee.

First, the lessee assigns error to the trial court's conclusion that it is liable for the fire damage. The court bases its conclusion on its interpretation of *Carstens v. Western Pipe & Steel Co.*, 142 Wash. 259, 252 P. 939 (1927). The trial court interpreted *Carstens* to require the lessee to prove that the parties *expressly agreed* to exculpate the lessee from liability for his own negligence. Here, the court concluded the testimony fell short of proving an express agreement to that effect and held the lessee liable for damages. We do not find *Carstens* to be controlling and reverse.

In *Carstens*, the lessee sought to avoid liability for damage to leased premises resulting from a fire negligently caused by its employee. It relied on a clause in its lease

which provided that the lessee would surrender the leased premises in as good a condition as when possession was taken, "damages by the elements or fire excepted." In construing this clause, the court stated at page 265:

> The thing for us to do is to determine what the parties to the lease had in mind, . . . Did that clause mean that the lessee was to be relieved from fires which were the result of its own negligence? We ought not to come to that conclusion, unless the lease definitely and certainly so expresses itself.

(Italics ours.) The *Carstens* court concluded that the exemption clause, standing alone, did not constitute a clear expression of an intent to relieve the lessee of liability for fires caused by its negligence. Here, the evidence of the parties' intent is not limited to the words of the exemption clause. In determining "what the parties to the lease had in mind," we are aided by two facts which apparently were not present in the *Carstens* case, *i.e.*, (1) the lessors had taken the responsibility of insuring the leased building in an adequate amount against the risk of fire, and (2) the lessee was aware of this action.

█ █ In our view, the trend of modern case law is to relieve the lessee from liability for fire damage caused by his own negligence where the circumstances lead the court to conclude the parties intended such a result.[1] *See Real and Personal Property,* 33 N.Y.U.L. Rev. 552, 585 (1958); and *Liability for Loss by Fire Among Insurer, Tenant and Landlord,* 18 Ohio St. L.J. 423 (1957). The decisions articulate several reasons for this position. First, it would be an undue hardship to require a tenant to insure against his own negligence when he is paying, through his rent, for the fire insurance which covers the premises in favor of the lessor. *Rock Springs Realty, Inc. v. Waid,* 392 S.W.2d 270, 278 (Mo. 1965). Second, insurance companies expect to pay their insureds for negligently caused fire, and they adjust

---

[1]For a collection of cases discussing this question, *see*, Annot., *Validity, Construction, and Effect of Provision of Lease Exempting Landlord or Tenant From Liability on Account of Fire,* 15 A.L.R.3d 786 (1967).

their rates accordingly. In this context, an insurer should not be allowed to treat a tenant, who is in privity with the insured landlord, as a negligent third party when it could not collect against its own insured had the insured negligently caused the fire. In effect, the tenant stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim. *Rock Springs Realty, Inc. v. Waid, supra* at 278; *Monterey Corp. v. Hart,* 216 Va. 843, 224 S.E.2d 142, 146 (1976). Third, the ordinary and usual meaning of "loss by fire" includes fires of negligent origin. A reasonable businessman or woman contracting as a lessee would understand that the term exempts him or her from liability for all fires covered by the usual fire insurance policy. *Rock Springs Realty, Inc. v. Waid, supra* at 278; *Monterey Corp. v. Hart, supra* at 146; *United States Fire Ins. Co. v. Phil–Mar Corp.,* 166 Ohio 85, 139 N.E.2d 330, 332 (1956).

In *Sutton v. Jondahl,* 532 P.2d 478, 482 (Okla. Ct. App. 1975), the court directly confronted the subrogation issue. It concluded that basic equity requires that when a lessor procures a fire insurance policy for a leased dwelling, that policy should be construed to protect all insurable interests, including the possessory interest of the tenant. Any other construction shifts the insurable risk assumed by the insurance company to the tenant—a party in a substantially different position from that of a negligent third party not in privity with the insured landlord. According to the *Sutton* court, the realities of today's landlord–tenant relationships mandate this approach. Tenants expect the owner to provide fire insurance, and insurance companies have encouraged this expectation by not promoting the sale to tenants of a second fire insurance policy. Allowing the lessor's insurer to proceed against the lessee is contrary to the reasonable expectations of the parties.

This same philosophy was expressed in R. Keeton, *Insurance Law* § 4.4(b), at 210 (1971):

Probably it is undesirable, from the point of view of public interest, that the risk of loss from a fire negligently caused by a lessee be upon the lessee rather than the lessor's insurer. Allowing the lessor's insurer to proceed against the lessee is surely contrary to expectations of persons other than those who have been exposed to this bit of law either during negotiations for a lease or else after a loss. . . . [P]erhaps [the courts] should at least adopt a rule against allowing the lessor's insurer to proceed against the lessee when lease provisions are ambiguous in this regard and the insurance policy is silent or ambiguous.

■ Our review of the cases in this area leads us to conclude that the intent of the parties is the primary factor considered by the courts in construing exemption clauses.[2] Here, the undisputed testimony of all the parties was that they had discussed the possibility of fire and the fact that the lessors carried fire insurance. That insurance was in the approximate amount of $30,000—an adequate sum in light of the $17,000 remaining on the lessors' underlying contract

---

[2] A mutual understanding that a tenant will be relieved of liability for his own negligence may be inferred from provisions of the parties' lease. For example, the lease may expressly require the lessor to carry fire insurance covering the leased building, or it may prohibit the tenant from performing any acts which would raise the cost of insurance. Other circumstances may also give rise to an inference that the parties have mutually understood that the lessor would provide the insurance.

The lease contained such additional provisions in *General Mills, Inc. v. Goldman,* 184 F.2d 359 (8th Cir. 1950); *Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co.,* 59 Cal. App. 3d 860, 131 Cal. Rptr. 211 (1976); *New Hampshire Ins. Co. v. Fox Midwest Theatres, Inc.,* 203 Kan. 720, 457 P.2d 133 (1969); *Mayfair Fabrics v. Henley,* 97 N.J. Super. 116, 234 A.2d 503 (1967); *Rock Springs Realty, Inc. v. Waid, supra; United States Fire Ins. Co. v. Phil–Mar Corp., supra; Cerny–Pickas & Co. v. C.R. Jahn Co.,* 7 Ill. 2d 393, 131 N.E.2d 100 (1956); and *accord, Belden Mfg. Co. v. Chicago Threaded Fasteners, Inc.,* 84 Ill. App. 2d 336, 228 N.E.2d 532 (1967); and *Stein v. Yarnall–Todd Chevrolet, Inc.,* 41 Ill. 2d 32, 241 N.E.2d 439 (1968).

However, the parties may evidence their intent to exculpate the lessee in other ways. In *Slocum v. Natural Prods. Co.,* 198 N.E. 747, 748 (Mass. 1935), the court relied on the natural meaning of the words of the exemption clause. There, the lease excepted damage by "fire or unavoidable casualty." The court reasoned that the parties would not have mentioned fire at all if they had intended that the fire must also be an unavoidable casualty. *See also, Employers Cas. Co. v. Wainwright,* 473 P.2d 181 (Colo. Ct. App. 1970).

obligation and the $30,000 which the trial judge determined was the fair–market value of the building. Mr. Morris' knowledge of the amount of the lessors' insurance, coupled with the language of the fire exemption provision in the lease, made it reasonable for him to assume that the policy also covered his corporation for liability for negligently caused fires. In these circumstances, if the lessors did not expect to cover the lessee under their policy, they should have expressly notified the lessee of the need for a second policy to cover its interest. Since they failed to do so, they have no cause of action against the lessee for the fire damage, and the insurance company has no right of subrogation.[3]

■ Second, the lessee assigns error to the trial court's award of rents to the lessors for the unexpired term of the lease. It is a well–settled rule of common law that in the case of a lease of a building and the land subadjacent, the

---

[3]The owners' arguments for a contrary holding are not persuasive. We have studied the cases cited by the owners for the proposition that exemption clauses do not include fires caused by a lessee's negligence unless the parties clearly and unequivocally express an intent to so exempt. Many of these cases may be distinguished on the same basis as *Carstens v. Western Pipe & Steel Co., supra, i.e.,* insurance was not present and/or the parties had not discussed insurance coverage. *See, e.g., Brown v. Aaron Rents, Inc.,* 414 F. Supp. 653 (W.D. Okla. 1975); *Dixie Fire & Cas. Co. v. Esso Standard Oil Co.,* 265 N.C. 121, 143 S.E.2d 279 (1965); *Hood v. Welch,* 463 S.W.2d 362 (Ark. 1971); *Sears, Roebuck & Co. v. Poling,* 81 N.W.2d 462 (Iowa 1957); *Winkler v. Appalachian Amusement Co.,* 238 N.C. 589, 79 S.E.2d 185 (1953); *Brophy v. Fairmont Creamery Co.,* 152 N.W. 557 (Neb. 1915).

Certain other opinions construed the exemption clauses at issue to expressly preclude negligence. *Dilks v. Flohr Chevrolet, Inc.,* 411 Pa. 425, 192 A.2d 682 (1963); *Bleakley v. Fixture Exch. Corp.,* 470 S.W.2d 296 (Tex. Civ. App. 1971); and *Stone Mountain Indus., Inc. v. Bennett,* 112 Ga. App. 466, 145 S.E.2d 591 (1965).

Nor does our construction of the exemption clause as exculpating the lessee from liability for its own negligence contravene public policy. No public interest is affected since the clause relates entirely to the private affairs of the contracting parties. *Carstens v. Western Pipe & Steel Co., supra* at 266; *Sears, Roebuck & Co. v. Poling, supra* at 465. Unless a statute specifically prohibits this type of exemption, it should be enforced. *See Galante v. Hathaway Bakeries, Inc.,* 6 App. Div. 2d 142, 176 N.Y.S.2d 87, 92 (1958), for a decision which strikes down a clause on the basis that a state statute prohibits such exemptions.

tenant's covenant to pay rent is not extinguished by destruction of the building, absent a provision in the lease to the contrary. *Anderson v. Ferguson,* 17 Wn.2d 262, 274, 135 P.2d 302 (1943), citing 32 Am. Jur. *Landlord and Tenant* § 493. Here, the lease did not contain a provision relieving the tenant of such liability. However, we have held that it was the intent of the parties to the lease that the lessors' fire insurance would cover the lessee as well. Therefore, if the lessors choose not to use the insurance proceeds to rebuild the leased premises, the lessee has an equitable interest in such proceeds to the extent of his liability for future rents. *See Wittmeyer v. Storms,* 203 S.W. 237 (Mo. Ct. App. 1918). In the instant case, the lessors could not rebuild because a current city ordinance prohibited the construction of a building on a lot as small as the lot in question. Thus, the lessee is not liable for the rents for the remainder of the 5–year term.

Third, the lessee contends that the trial court erred when it awarded the lessors damages for costs they incurred cleaning up after the fire. Since we have held that the parties intended the lessee to benefit from the lessors' policy, the lessee is not liable for cleanup costs if the policy provided coverage for such costs. The policy not being a part of the record on appeal makes it impossible for this court to finally determine this issue. Consequently, it must be resolved by the trial court on remand.

Accordingly, the judgment of the trial court is reversed and remanded.

McINTURFF and ROE, JJ., concur.

Reconsideration denied May 8, 1979.

Review denied by Supreme Court August 22, 1979.