[No. D033347. Fourth Dist., Div. One. Aug. 25, 2000.]

FIRE INSURANCE EXCHANGE, Plaintiff and Appellant, v.
REGINALD HAMMOND et al., Defendants and Respondents.

## COUNSEL

Johnson & Edwards, Daniel B. McCarthy and Jared P. Hanson for Plaintiff and Appellant.

Shifflet, Kane & Konoske, Gregory P. Konoske, Kirk M. Nuzum; Law Offices of Bryce O. Willett and Jonathan A. Brenner for Defendants and Respondents.

## OPINION

**HALLER, J.**—As a lessor's insurer, plaintiff Fire Insurance Exchange (FIE) seeks reversal of a summary judgment denying its subrogation claim against the lessees, defendants Reginald Hammond and Sevilla Hammond, for fire damages it attributes to their negligence or the negligence of their guests or invitees. The trial court relied on *Parsons Manufacturing Corp. v. Superior Court* (1984) 156 Cal.App.3d 1151 [203 Cal.Rptr. 419] (*Parsons*), in which subrogation was denied on the ground the lessor's fire policy was for the mutual benefit of the lessor and lessee. We reverse the judgment, concluding the rental agreement here expresses no intent of the parties to insure the Hammonds under the lessor's policy or to exculpate them from negligence liability.

### BACKGROUND

In October 1995 the Hammonds rented a home from Henry Dawson. The rental agreement did not expressly require Dawson or the Hammonds to maintain fire insurance and they did not discuss the matter. Dawson obtained a fire policy from FIE. Additionally, the Hammonds obtained a renters policy covering fire damages to the premises caused by their negligence. In December 1995 the home was damaged by fire and FIE was required to pay Dawson approximately $52,465 in repair costs.

FIE sued the Hammonds for negligence and breach of contract under a subrogation theory. FIE alleged the Hammonds or their guests or invitees "negligently left an upholstered chair on top of a floor heater grate in the living room of the [house] and caused a fire to occur."[1] FIE also alleged the lease "required [the Hammonds] to be responsible for and to pay any and all damages caused by [them], guests or invitees." The rental agreement provides in pertinent part:

---

[1] FIE later added Barbara Antos, apparently a guest of the Hammonds, as a defendant. She is not involved in this appeal.

"MAINTENANCE, REPAIRS, OR ALTERATIONS: Tenant shall, at his own expense, and at all times, maintain the premises in a clean and sanitary manner including all equipment, appliances, furniture and furnishings therein and shall surrender the same, at termination hereof, as in good condition as received, *normal wear and tear excepted. Tenant shall be responsible for damages caused by his negligence and that of his family or invitees and guests.* Tenant shall not paint, paper or otherwise redecorate or make alterations to the premises without the prior written consent of the Owner. Tenant shall irrigate and maintain any surrounding grounds, including lawns and shrubbery, and keep the same clear of rubbish or weeds if such grounds are a part of the premises and are exclusively for the use of the Tenant. Tenant shall not commit any waste upon the premises, or any nuisance or any act which may disturb the quiet enjoyment of any tenant in the building. [¶] . . . [¶] DAMAGES TO PREMISES: if the premises are . . . damaged by fire or from any other cause as to render them untenantable, then either party shall have the right to terminate this Lease as of the date on which such damage occurs, through written notice to the other party, to be given within fifteen . . . days after the occurrence of such damage; except that should such damage or destruction occur as a result of the abuse or negligence of Tenant, or its invitees, then Owner only shall have the right of termination. Should this right be exercised by either Owner or Tenant, then rent for the current month shall be prorated between the parties as of the date the damage occurred and any prepaid rent and unused security deposit shall be refunded to Tenant. *If this lease is not terminated, the Owner shall promptly repair the premises and there shall be a proportionate deduction of rent until the premises are repaired and ready for Tenant's occupancy. The proportionate reduction shall be based on the extent to which the making of repairs interferes with Tenant's reasonable use of the premises.*" (Italics added.)

The Hammonds moved for summary judgment, arguing that under *Parsons, supra,* 156 Cal.App.3d 1151, subrogation was unavailable as a matter of law. Relying on *Parsons,* the court ruled in the Hammonds' favor, finding the "DAMAGES TO PREMISES" section of the agreement "adverts to fire damage . . . and there is no specific obligation placed upon [them] to obtain insurance[.]" (See *id.* at p. 1162.) Judgment was entered on January 5, 1999.

DISCUSSION

I.  *Standard of Review*

Summary judgment is proper only where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.

(Code Civ. Proc., § 437c, subd. (c).) ■ "On review of a summary judgment in favor of the defendant, we review the record de novo to determine whether the defendant has conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial. [Citation.]" (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

## II.  *Insurer's Right of Subrogation*

### A

■ "In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1291-1292 [77 Cal.Rptr.2d 296].) "The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to ' "stand in the shoes" ' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have." (*Id.* at p. 1292.)

### B

In California, courts have held a lessee is not responsible for negligently caused fire damages where the lessor and lessee intended the lessor's fire policy to be for their mutual benefit. In *Fred A. Chapin Lumber Co. v. Lumber Bargains, Inc.* (1961) 189 Cal.App.2d 613, 618-619, 622 [11 Cal.Rptr. 634], the court inferred the lessor's policy was for the mutual benefit of the lessor and lessee where the lease expressly required the lessor to maintain fire insurance. (Accord, *Gordon v. J. C. Penney Co.* (1970) 7 Cal.App.3d 280, 282, 284 [86 Cal.Rptr. 604].)

In *Liberty Mutual Fire Ins. Co. v. Auto Spring Supply Co.* (1976) 59 Cal.App.3d 860 [131 Cal.Rptr. 211] (*Liberty Mutual*), the lessee's insurer was denied subrogation against the sublessee. Under the lease agreements, the sublessee's rent covered the premium on the lessee's fire policy and proceeds of the policy were to be used to repair fire damages. The court held it was "quite obvious . . . the parties to the lease and the sublease all

intended that the proceeds of Liberty's fire insurance policy, maintained by the lessee at [the sublessee's] expense, were to constitute the protection of all parties to the lease documents against the fire loss[.] This was the commercial expectation of these parties. Stated otherwise, under the facts of this case, we regard the subtenant . . . as an implied in law co-insured of [the lessee], absent an express agreement between them to the contrary." (*Id.* at p. 865.)

The *Liberty Mutual* court relied on *General Mills v. Goldman* (8th Cir. 1950) 184 F.2d 359, 365-366 (*General Mills*), for the proposition that "even an implied provision for fire insurance in a lease represents the agreement of the parties thereto that nonintentional loss by fire shall be paid . . . only from the proceeds of the policy." (*Liberty Mutual, supra,* 59 Cal.App.3d at p. 866.) In *General Mills,* "the lease relieved the tenant . . . from liability for fire loss through its provision that on termination of the lease the tenant should return the property in good condition, ' "loss by fire . . . excepted." ' [Citation.]"[2] (*Liberty Mutual, supra,* at p. 866, fn. 6, quoting *General Mills, supra,* at p. 366.)

In *Parsons, supra,* 156 Cal.App.3d 1151, the court reversed a partial summary judgment for the insurer and the denial of summary judgment for the lessee. There, the lease's yield-up clause provided "for [the lessee's] return of the premises in the same condition as received, '. . . damage by fire, act of God or by the elements excepted[.]' " (*Id.* at p. 1155.) The agreement also required the lessor to rebuild after fire loss under certain (unspecified) circumstances. (*Id.* at p. 1162.)

In the court's view, "the lease agreement alone was a sufficient showing by lessee [for summary judgment], because it was *rife with hints that lessor would procure insurance on the premises.* . . . [T]he lessee was entitled to expect that such insurance would be for its benefit as well as for the lessor's." (*Parsons, supra,* 156 Cal.App.3d at pp. 1162-1163, italics added.) The court explained: "We do not mean our opinion to state that a lessor may never shift to the lessee the burden of insuring against the lessee's negligence. We state only that, at least where the [lease] agreement adverts to the possibility of fire and there is no clear language or other admissible evidence showing an agreement to the contrary, a lease agreement should be read to place on the lessor the burden of insuring the premises (as distinguished

---

[2]Rental agreements commonly require the lessee to "yield up" the premises in the same condition as when the lease commenced, ordinarily with certain exceptions. (See, e.g., *New Hampshire Ins. Group v. Labombard* (1986) 155 Mich.App. 369 [399 N.W.2d 527, 528].) For convenience, we refer to such provisions as "yield-up" clauses. (See *Bannock Bldg. Co. v. Sahlberg* (1994) 126 Idaho 545 [887 P.2d 1052, 1055].)

from the lessee's personal property) against lessor *and lessee* negligence." (*Parsons, supra,* at p. 1162, original italics.)

The *Parsons* court, noting the scarcity of California opinions on the subrogation issue, was persuaded by *Rizzuto v. Morris* (1979) 22 Wash.App. 951 [592 P.2d 688] (*Rizzuto*). (*Parsons, supra,* 156 Cal.App.3d at pp. 1158, 1162.) In *Rizzuto,* as in *Parsons,* the lease contained a yield-up clause excepting fire damages. Further, the lessors and lessee discussed the possibility of fire and that the lessors insured against such peril. The court held, "[I]f the lessors did not expect to cover the lessee under their policy, they should have expressly notified the lessee of the need for a second policy to cover its interest. Since they failed to do so, they have no cause of action against the lessee for the fire damage, and the insurance company has no right of subrogation." (*Rizzuto, supra,* at p. 691.)

According to a commentator, "[w]hat may be a modern trend of authority . . . holds that the lessor's insurer cannot obtain subrogation against the lessee, in the absence of an express agreement or lease provision establishing the lessee's liability, because the lessee is considered a co-insured of the lessor for the purpose of preventing subrogation[.]"[3] (6A Appleman, Ins. Law and Practice (2000 supp.) § 4055, p. 118.) The trend is traced to *Sutton v. Jondahl* (Okla.Ct.App. 1975) 532 P.2d 478, where the court broadly held that under equitable principles the lessor's fire policy should be construed to protect all insurable interests, including the tenant's possessory interest. (*Id.* at p. 481.) Among other policy considerations, the court cited the inequity of requiring a tenant to insure against his or her own negligence when rent payments presumably cover the lessor's fire policy premiums.[4] (532 P.2d at p. 482.)

However, in the majority of out-of-state cases denying subrogation, the lease expressly required the lessor to maintain fire insurance and/or excepted fire damages in the yield-up clause.[5] As in California, it appears the subrogation issue is generally resolved on a case-by-case basis, dependent on the

---

[3]We asked the parties to discuss relevant out-of-jurisdiction authorities in supplemental briefing. They complied, and we have taken their responses into consideration.

[4]In *Page v. Scott* (1978) 263 Ark. 684 [567 S.W.2d 101], the court viewed the matter differently: "The fiction that by paying the rent, the lessee paid the insurance premium is not appropriate. There is no evidence that [the lessee] paid any greater rent because of the insurance than he would have paid had [the lessor] not taken insurance . . . . Such a fiction ignores the fact that more often than not the market, i.e., supply and demand, is the controlling factor in fixing and negotiating rents." (*Id.* at pp. 103-104.)

[5]See, e.g., *Lexington Ins. Co. v. Raboin* (Del.Super.Ct. 1998) 712 A.2d 1011; *Continental Ins. Co. v. Kennerson* (Fla.Dist.Ct.App. 1995) 661 So.2d 325; *Lexington Ins. Co. v. All Regions Chemical Labs, Inc.* (1995) 419 Mass. 712 [647 N.E.2d 399]; *American Nat. Bank and Trust v. Edgeworth* (1993) 249 Ill.App.3d 52 [188 Ill.Dec. 329, 618 N.E.2d 899]; *Diocese of*

parties' reasonable expectations in light of the particular lease terms.[6] (See, e.g., *Bannock Bldg. Co. v. Sahlberg, supra,* 887 P.2d at p. 1055; *Dix Mut. Ins. Co. v. Framboise* (1992) 149 Ill.2d 314 [173 Ill.Dec. 648, 597 N.E.2d 622, 625]; *Lexington Ins. Co. v. Raboin, supra,* 712 A.2d at pp. 1015-1016; *Continental Ins. Co. v. Kennerson, supra,* 661 So.2d at p. 326.)

## C

▮▮▮ FIE persuasively contends the trial court's reliance on *Parsons* was misplaced given the significant differences between the rental agreements under consideration. In contrast to the yield-up clause in *Parsons* excepting fire loss, the yield-up clause here excepts only "normal wear and tear." A yield-up clause excepting fire damage may support the implication the lessee reasonably expected coverage under the lessor's policy. (See *Lexington Ins. Co. v. Raboin, supra,* 712 A.2d at p. 1014; *Bannock Building Co. v. Sahlberg, supra,* 887 P.2d at p. 1055.)

Further, unlike in *Parsons,* the agreement here expressly holds the Hammonds liable for damages caused by their negligence or the negligence of their guests or invitees. Notably, the yield-up and negligence provisions appear together, stressing the Hammonds' liability for the negligent failure to surrender the premises in good condition. Courts have denied subrogation, notwithstanding a lease provision holding the tenant responsible for his or her own negligence, where the lease also expressly required the lessor to maintain fire insurance on the premises. (See, e.g., *American Nat. Bank and Trust v. Edgeworth, supra,* 618 N.E.2d at p. 902; *Alaska Ins. Co. v. RCA*

---

*Covington v. Christian Appalachian Project* (Ky.Ct.App. 1990) 787 S.W.2d 704; *Safeco Ins. Companies v. Weisgerber* (1989) 115 Idaho 428 [767 P.2d 271]; *Tate v. Trialco Scrap, Inc.* (M.D.Tenn. 1989) 745 F.Supp. 458; *Fashion Place Inv. v. Salt Lake County* (Utah Ct.App. 1989) 776 P.2d 941); *New Hampshire Ins. Group v. Labombard, supra,* 155 Mich.App. 369 [399 N.W.2d 527]; *Safeco Ins. Co. v. Capri* (1985) 101 Nev. 429 [705 P.2d 659]; *Pettus v. APC, Inc.* (1982) 162 Ga.App. 804 [293 S.E.2d 65]; *Alaska Ins. Co. v. RCA Alaska Commun.* (Alaska 1981) 623 P.2d 1216; *West American Ins. Co. v. Pic Way Shoes etc.* (1981) 110 Mich.App. 684 [313 N.W.2d 187]; *Rizzuto, supra,* 592 P.2d 688; *Monterey Corp. v. Hart* (1976) 216 Va. 843 [224 S.E.2d 142]; *Liberty Mut. Fire Ins. Co. v. Jefferson Fam. Fair, Inc.* (Ky. 1975) 521 S.W.2d 244; *Rock Springs Realty, Inc. v. Waid* (Mo. 1965) 392 S.W.2d 270 [15 A.L.R.3d 774]; *Cerny-Pickas & Company v. C. R. Jahn Company* (1955) 7 Ill.2d 393 [131 N.E.2d 100]; *United States Fire Ins. Co. v. Phil-Mar Corporation* (1956) 166 Ohio St. 85 [1 Ohio Ops.2d 212, 139 N.E.2d 330]; *Fry v. Jordan Auto Company* (1955) 224 Miss. 445 [80 So.2d 53].

[6]"It should be noted that the modern trend is not universally accepted. A number of courts have arrived at an opposite position: that a lease should be strictly construed, that the tenant who has caused damage to the premises should not escape the common-law consequences of the tenant's own negligence, and that, absent an agreement to the contrary, the tenant may be subject to subrogation by the landlord's carrier." (*Lexington Ins. Co. v. Raboin, supra,* 712 A.2d at p. 1016.)

*Alaska Commun., supra,* 623 P.2d at pp. 1218-1219; but see *Cascade Trailer Court v. Beeson* (1988) 50 Wash.App. 678 [749 P.2d 761, 766] [subrogation denied where lease held tenants responsible for negligence but did not expressly require landlord to maintain fire insurance].)

Moreover, the mere reference in the agreement here to fire peril does not suggest the parties intended to absolve the Hammonds of responsibility for negligently caused fire damages. If a fire rendered the premises uninhabitable, either Dawson or the Hammonds had the right to terminate the lease, unless the fire was caused by the negligence of the Hammonds or their invitees; in that event, Dawson alone had the right to terminate the lease. The lease did not require Dawson to repair fire damages caused by the negligence of the Hammonds or their invitees. If Dawson elected to repair such damages and not terminate the lease, there is no indication the repairs would be made without cost to the Hammonds. (See *Continental Ins. Co. v. Kennerson, supra,* 661 So.2d at p. 326 [lessor's obligation to repair fire damages supports inference parties allocated risk of negligently caused fire to lessor].)

■ "A contract must be interpreted to give effect to the mutual, expressed intention of the parties. Where the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone." (*Ben-Zvi v. Edmar Co.* (1995) 40 Cal.App.4th 468, 473 [47 Cal.Rptr.2d 12].) ■ Under the rental agreement here, we conclude the parties had no reasonable expectation the Hammonds were exculpated from liability for negligently caused fire damages or that Dawson's FIE policy was for their mutual benefit. The agreement contains no term expressly or impliedly overriding the provision holding the Hammonds liable for their negligence or the negligence of their guests or invitees, whatever the cause.[7] Accordingly, FIE's subrogation action is viable and the Hammonds are not entitled to judgment as a matter of law.

## DISPOSITION

The judgment is reversed.

Work, Acting P. J., and McDonald, J., concurred.

---

[7]Because the rental agreement is unambiguous, we need not consider the parties' extrinsic evidence.