Filed 3/4/19; Certified for publication 4/2/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| WESTERN HERITAGE INSURANCE COMPANY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FRANCES TODD, INC., et al.,<br><br>    Defendants and Respondents. | A152428<br><br>(Alameda County<br>Super. Ct. No. RG14742991) |

Plaintiff and appellant Western Heritage Insurance Company (Western Heritage) appeals from a summary judgment entered in favor of defendants and respondents Frances Todd, Inc. dba The Wooden Duck, Eric Todd Gellerman and Amy Francis Ferber (collectively, "defendants"). (Code Civ. Proc., 437c.)[1] Western Heritage contends the trial court erred in concluding it was barred from bringing a subrogation claim for amounts it paid out under an insurance policy for fire damage. We affirm. Like the trial court, we conclude that defendants reasonably expected their landlord, an insured under the policy, to procure fire insurance. Because Western Heritage was barred from suing its own insured for negligently causing a fire, and because the defendants were implied insureds under the policy, Western Heritage could not sue them in subrogation, even if we assume defendants were negligent.

---

[1] Further statutory references are to the Code of Civil Procedure.

## I. BACKGROUND

The East Shore Commercial Condominiums are located on Second Street in Berkeley and are managed by the East Shore Commercial Condominiums Owners' Association (the Association). Article 13.1 of the Declaration of Codes, Covenants and Restrictions (CC&Rs) applicable to the property requires the Association to "obtain and maintain a master or blanket policy of all risk property insurance coverage for all Improvements within the Project, insuring against loss or damage by fire or other casualty. . . . The policy shall name as insured the Association, the Owners and all Mortgagees of record, as their respective interests may appear." Article 13.3 provides in part, "Any insurance maintained by the Association shall contain [a] 'waiver of subrogation' as to the Association, its officers, Owners and the occupants of the Units and Mortgagees. . . ." Article 13.4 prohibits an individual owner from obtaining fire insurance while allowing an owner to obtain individual liability insurance. Article 3.1 requires that all "occupants and tenants" comply with the CC&Rs.

The condominium located at 1800 Second Street, part of the East Shore Commercial Condominiums, was owned by William R. de Carion dba Surfwood Properties (de Carion) and was leased to defendants, who owned and operated a furniture manufacturing business. The parties' relationship was governed by a written lease dated February 1, 2013 (the Lease). Paragraph 5 of the Lease provided, "Lessee shall not commit waste, nor carry on any activity which would destroy or impair the quiet enjoyment of other lessees in the building of which the Premises form a part." Paragraph 6 required the Lessee to keep the Premises in good repair. Paragraph 8(A) required the Lessee to "keep in force a public *liability* insurance policy covering the leased Premises, including parking areas, if any, included in this Lease, insuring Lessee and naming Lessor as an additional insured. . . . Said insurance policy shall have minimum limits of coverage of $1,000,000 in the aggregate." (Italics added.) The Lease did not specify which party (Lessor or Lessee) would carry *fire* insurance.

Paragraph 9(B) of the Lease, entitled "Lessor's Right to Recover Damage(s)," provided, "Such efforts as Lessor may make to mitigate damages caused by Lessee's

2

breach of this Lease shall not constitute a waiver of Lessor's right to recover damages against Lessee hereunder. Nor shall anything herein contained affect Lessor's right to indemnification against Lessee for any liability arising prior to the termination of this Lease for personal injuries or property damage resulting from the acts or omissions of Lessee, and Lessee hereby agrees to indemnify and hold Lessor harmless from any such injuries or property damages. . . except for damages occasioned by Lessor's intentional or grossly negligent acts."

Paragraph 11 of the Lease provided in relevant part, "Lessee agrees to surrender the Premises at the termination of the tenancy herein created, in substantially the same condition as they were on the Commencement Date, reasonable wear and tear, casualty, and any alterations, improvements, and/or additions which are the property of Lessor under Paragraph 7 excepted." Paragraph 19 allowed either party to terminate the lease when damage due to fire, other casualty or eminent domain rendered ten percent or more of the property "untenantable." In the event the fire, other casualty or taking rendered less than ten percent of the property untenantable, "the Lessor shall proceed to repair the Premises and/or the building and/or the property of which the Premises are a part to the extent of any insurance proceeds received on account of a Casualty. . . ."

Western Heritage issued an insurance policy (No. SCP 0955130) to Eastshore for the commercial properties on Second Street, effective May 28, 2013 to May 28, 2014 (the Policy). Each of the owners of the condominiums, including de Carion, was a named insured on the Policy. On April 12, 2014, a fire erupted in the condominium owned by de Carion which damaged that and other nearby property. Western Heritage has paid for damage caused by the fire under the Policy. On April 16, 2015, Western Heritage filed a complaint in subrogation against defendants, alleging two causes of action for negligence and breach of the Lease. It alleged the fire was caused by the negligence of defendants,

3

who knew about faulty wiring in advance of the fire and who maintained flammable staining materials inside the warehouse.[2]

On December 5, 2016, defendants brought a motion for summary judgment against Western Heritage. They argued they were implied co-insureds under the Policy, and that Western Heritage consequently could not bring a subrogation action against them. On February 7, 2017, Western Heritage filed a first amended complaint in subrogation (to which the motion was stipulated to apply), alleging a single cause of action for negligence. It opposed the motion for summary judgment, arguing that defendants were not implied insureds given the language of the lease between de Carion and defendants, and that in any event, defendants had no contractual relationship with the Association, who was the only named insured for the fire loss.

On June 1, 2017, the trial court granted summary judgment. In a detailed order, it concluded that the question was whether the Lease contemplated that the Western Heritage policy would be for defendants' benefit. It found the Lease provisions in this case to be "strikingly similar" to those in *Parsons Manufacturing Corp. v. Superior Court* (1984) 156 Cal.App.3d 1151 (*Parsons*). "As in *Parsons*, fairly interpreting all of the pertinent lease provisions in context with one another, the lease can only be interpreted to place on the lessor (de Carion dba Surfwood Properties) the burden of insuring from fire losses to the leased premises (as distinguished from the lessee's personal property) against lessor and *lessee* negligence." Subrogation was thus inappropriate.

## II. DISCUSSION

### A. *Summary Judgment*

Summary judgment is available when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) A defendant moving for summary judgment bears the burden of establishing that " 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that

---

[2]     This action was consolidated with cases brought by other parties against defendants and Pacific Gas & Electric Co. (PG&E). The defendants have filed a cross-complaint against PG&E.

4

'there is a complete defense' thereto." (*Id*., subd. (o)(1); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Once the defendant meets its burden, the burden shifts to the plaintiff to set forth "specific facts" showing that a triable issue of fact exists. (§ 437c, subd. (p)(2); *Aguilar*, at p. 849.) "If a party moving for summary judgment in any action . . . would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment." (*Aguilar* at p. 855.)

The interpretation of a contract is a question of law subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence. (*Ibid*.; *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 604; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) "[T]o the extent the evidence is not in conflict, we construe the [contract], and we resolve any conflicting inferences, ourselves." (*Schaefer's Ambulance Service v. County of San Bernardino* (1998) 68 Cal.App.4th 581, 586.)

On appeal, we independently review an order granting summary judgment. (*State Farm General Ins. Co. v. Wells Fargo Bank, N.A.* (2006) 143 Cal.App.4th 1098, 1105 (*State Farm*).)[3]

B. *Equitable Subrogation—General Principles*

" 'Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim.' [Citation.] It provides a ' " 'method of compelling the ultimate payment by one who in

---

[3]     In this case, Western Heritage is seeking equitable subrogation which, "[a]s its name suggests. . . invokes the court's equitable jurisdiction." (*Dieden v. Schmidt* (2002) 104 Cal.App.4th 645, 654.) "Summary judgment motions usually raise matters of law, but not when the trial court grants or denies such a motion on the basis of equitable determinations. . . .[t]he matter then becomes one of discretion, which this court reviews under the abuse of discretion standard." (*Ibid*.) The parties in this case raise no argument that in reviewing the trial court's conclusion that Western Heritage is not entitled to pursue equitable subrogation, we should apply an abuse-of-discretion standard. We assume the ordinary standard of independent review for summary judgment motions applies.

5

justice and good conscience *ought* to make it—of putting the charge where it justly belongs.' " ' " (*State Farm*, *supra*, 143 Cal.App.4th at p. 1105.)

" 'In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid.' [Citation.] 'The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to " 'stand in the shoes' " of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have.' [Citation.]" (*Fire Insurance Exchange v. Hammond* (2000) 83 Cal.App.4th 313, 317 (*Hammond*).)

"The essential elements of an insurer's cause of action for equitable subrogation are as follows: (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was *not* primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1292.)

"While the insurer by subrogation steps into the shoes of the insured, that substitute position is qualified by a number of equitable principles. For example, an insurer cannot bring a subrogation action against its own insured. . . . . [¶] The most restrictive principle is the doctrine of superior equities, which prevents an insurer from recovering against a party whose equities are equal or superior to those of the insurer. (*State Farm*, *supra*, 143 Cal.App.4th at pp. 1106–1107.)

C. *Subrogation Action for Fire Loss Caused by Negligence of Lessee*

"In California, courts have held a lessee is not responsible for negligently caused fire damages where the lessor and lessee intended the lessor's fire policy to be for their mutual benefit." (*Hammond*, *supra*, 83 Cal.App.3d at p. 317.) The import of this rule is that an insurer may not seek subrogation against an insured's lessee in such cases for a fire he or she negligently causes, even when the elements necessary for subrogation have otherwise been met.

Thus, in *Fred A. Chapin Lumber Co. v. Lumber Bargains, Inc.* (1961) 189 Cal.App.2d 613, 618–619, 622, the lessor's policy was held in an appeal following an order granting judgment on the pleadings to be for the mutual benefit of the lessor and lessee where the lease expressly required the lessor to maintain fire insurance. This rule was followed in *Gordon v. J.C. Penney Co.* (1970) 7 Cal.App.3d 280, 282, 284, which affirmed a judgment in favor of the lessee following a court trial. "A fire insurance policy which does not cover fires caused or contributed to by the insured would be an oddity indeed. As we stated in *Sacramento-Yolo Port Dist. v. Cargill of California, Inc.* (1970) 4 Cal.App.3d 1004, 1012[]: 'Otherwise, few insured fire claims would be paid without controversy and most would require litigation.' For that reason we do not deem that a policy 'for the benefit' of a lessee excludes coverage for fires caused by his negligence. We would not construe that to have been the intent of the parties here without a provision in the lease expressly so providing." (*Gordon* at pp. 284–285.)

In *Liberty Mutual Fire Ins. Co. v. Auto Spring Supply Co.* (1976) 59 Cal.App.3d 860, the lessee's insurer was denied subrogation against the sub-lessee where the sub-lessee's rent covered the premium on the lessee's fire policy and proceeds of the policy

7

were to be used to repair fire damages. The court held it was ". . . quite obvious from these provisions that the parties to the lease and the sublease all intended that the proceeds of [the insurance company's] fire insurance policy, maintained by the lessee at [the sub-lessee's] expense, were to constitute the protection of all parties to the lease documents against fire loss[.] This was the commercial expectation of these parties. Stated otherwise, under the facts of this case, we regard the subtenant . . . as an implied in law co-insured of [the lessee], absent an express agreement between them to the contrary." (*Id*. at p. 865.)

In *Parsons*, *supra*, 156 Cal.App.3d at 1151, the court reversed a partial summary judgment for the insurer and the corresponding denial of summary judgment for the lessee. In that case, the lease's "yield-up" clause stating the conditions for the return of the premises provided "for [the lessee's] return of the premises in the same condition as received, ' . . . damage by fire, act of God or by the elements excepted[.]' " (*Id*. at p. 1155.) The agreement also required the lessor to rebuild after fire loss under certain circumstances. (*Id*. at p. 1162.) This suggested the lessor would procure insurance on the premises, and the lessee would reasonably expect that insurance to be for its benefit as well as the lessor's. (*Id*. at pp. 1162–1163.)

The court in *Parsons* adopted the reasoning of *Rizzuto v. Morris* (1979) 22 Wash.App. 951, 955–956: "First, it would be an undue hardship to require a tenant to insure against his own negligence when he is paying, through his rent, for the fire insurance which covers the premises in favor of the lessor. [Citation.] Second, insurance companies expect to pay their insureds for negligently caused fire, and they adjust their rates accordingly. In this context, an insurer should not be allowed to treat a tenant, who is in privity with the insured landlord, as a negligent third party when it could not collect against its own insured had the insured negligently caused the fire. In effect, the tenant stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim. [Citations.] Third, the ordinary and usual meaning of 'loss by fire' includes fires of negligent origin. A reasonable businessman or woman contracting as a

8

lessee would understand that the term exempts him or her from liability for all fires covered by the usual fire insurance policy. [Citations.]"

The court further explained, "We do not mean our opinion to state that a lessor may never shift to the lessee the burden of insuring against the lessee's negligence. We state only that, at least where the [lease] agreement adverts to the possibility of fire and there is no clear language or other admissible evidence showing an agreement to the contrary, a lease agreement should be read to place on the lessor the burden of insuring the premises (as distinguished from the lessee's personal property) against lessor *and lessee* negligence." (*Parsons*, *supra* 156 Cal.App.3d at p. 1162.) The insurer did not present evidence in opposition "to rebut the inference from the language of the lease that lessor would procure insurance for the benefit of both lessor and lessee. Therefore, the court erred in denying [the tenant's] motion for summary judgment." (*Id*. at p. 1164.)

Finally, in *Hammond*, *supra*, 83 Cal.App.4th at pages 320 to 321, the court considered a summary judgment in favor of the lessee on a subrogation action and reversed, finding the action to be viable. The court found *Parsons* distinguishable "given the significant differences between the rental agreements under consideration." Significantly, the yield-up clause in *Hammond* exempted only " 'normal wear and tear' " from the requirement that the lessee return the premises to the landlord in the same condition, and the lease expressly held the lessee liable for damages caused by their negligence. (*Ibid*.) The lease provided that if a fire rendered the premises uninhabitable, either side could terminate the lease unless the fire was caused by the negligence of the lessee, in which case only the lessor could terminate. Despite its conclusion that the parties to the lease did not under the facts of that case intend the lessee to be an implied co-insured, the court noted that "[a] yield-up clause excepting fire damage may support the implication the lessee reasonably expected coverage under the lessor's policy" and further noted that courts have denied subrogation where the lease held tenant responsible for negligence but required the landlord to maintain fire insurance. (*Ibid*.) In *Hammond*,

9

the lease did neither, but the court did not change the general rule that subrogation is not permitted when the policy is intended by the parties to the lease to benefit the lessee.[4]

C. *Analysis*

The rule adopted in California precludes a subrogation action by the fire insurance company of a lessor against a lessee where a lessee's negligence causes a fire, but the policy is intended to benefit the lessee. In such cases, the lessee is treated as an insured, despite the lessee not being a named insured on the policy. Because the insurance company could not seek subrogation against its own named insured (the lessor), it cannot seek subrogation against the lessee. In this case, we conclude the Western Heritage policy was maintained for defendants' benefit and that summary judgment was properly granted in their favor.

First, the Lease in this case required defendants to obtain only liability insurance, not fire insurance. The implication was that fire insurance would be carried by the lessor, de Carion. Wiiliam R. de Carion was an additional named insured on the insurance policy purchased by the Association, as the CC&Rs governing the property required.

Second, owners such as de Carion were prohibited by the CC&Rs from purchasing an individual fire policy, as were "occupants" and "tenants" of the premises to whom the CC&Rs applied. (See Policy, [¶] [¶] 3.1, 13.4.) Defendants could not, therefore, purchase their own first-party fire insurance for the structure (a structure in which they held no ownership interest).

Third, the yield-up clause in this case provided that defendants, as lessees, agreed to "surrender the Premises at the termination of the tenancy herein created, in substantially the same condition as they were on the Commencement Date, reasonable wear and tear, *casualty*, and any alterations, improvements, and/or additions which are

---

[4]   The parties also cite *Morris v. Warner* (1929) 207 Cal. 498, in which the landlord sought and was allowed to recover damages for a fire caused by a tenant's negligence, where the lease required the tenant to keep the leased premises in a "clean and wholesome condition." However, that case is not germane to an insurer's right to subrogation where "the pleadings and evidence are absolutely silent on the insurance feature." (*Id*. at p. 506.)

10

the property of the Lessor under Paragraph 7 excepted." (Lease, [¶] 11, italics added.) "Casualty" includes damage from fire.[5] The clause is thus similar to the one in *Parsons, supra*, 156 Cal.App.3d at pp. 1162. Where the lease agreement "adverts to the possibility of fire and there is no clear language or other admissible evidence showing an agreement to the contrary, a lease agreement should be read to place on the lessor the burden of insuring the premises (as distinguished from the lessee's personal property) against lessor *and lessee* negligence." (*Ibid*.; see also *Commercial Union Ins. Co. v. North American Paper Co.* (D.Mass. 2001) 138 F.Supp.2d 222, 230–231 [tenant was implied co-insured of the landlord and subrogation against it was barred where there was no express agreement that tenant would obtain his or her own fire insurance].)

Western Heritage argues de Carion and defendants did not intend de Carion to obtain fire insurance for defendants' benefit. It points out that defendants had a different insurable interest than did de Carion (personal property versus the structure) and notes that the Lease had no provision expressly requiring de Carion to obtain fire insurance. That defendants' interest in the property is not coextensive with de Carion's interest does not mean that subrogation is permitted; the question is whether the fire insurance policy was intended to benefit the defendants, making them implied co-insureds. The CC&R's, applicable to both de Carion as an owner and defendants as occupants, required the Association to obtain a policy of fire insurance and to name de Carion as an insured on that policy, and precluded any party other than the Association from maintaining fire insurance on the premises. The fire insurance purchased by the Association was intended to be the only fire policy on the property and was for the benefit of the property's lessees absent language to the contrary in the lease.

In support of its argument that summary judgment in favor of defendants was improper, Western Heritage notes that under paragraph 9(B) of the Lease, de Carion was

---

[5] Although the term "casualty" is not specifically defined in the lease, paragraph 19 defines the rights of the parties with respect to termination of the lease in the event of damage "due to fire or *other casualty* to the Premises." (Italics added.) This shows that fire is a type of casualty for purposes of the policy.

entitled to recover damages caused by defendants' acts or omissions. This is not precisely correct. That paragraph provides that defendants will indemnify de Carion and hold him harmless for property damage or personal injury resulting from the acts and omissions of defendants; the underlying liability in question is to third parties. (See *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 969 [indemnification and hold harmless clauses ordinarily relate to third parties].) That defendants might be obliged to indemnify de Carion for liability to third parties does not mean they are directly liable to him in all cases where he has been compensated by insurance, even if the underlying damage arose from their negligence.

Western Heritage cites *Hammond*, *supra*, 83 Cal.App.4th at page 315, in which a subrogation claim against an allegedly negligent tenant was allowed where the lease "required the [tenants] to be responsible for and to pay any and all damages caused by them, guests or invitees." But in *Hammond*, the lease's yield-up clause excepted only ordinary wear and tear, not fire, thus requiring the *tenant* to return fire-damaged premises to their original condition. The court observed that "in the majority of the out-of-state cases denying subrogation, the lease expressly required the lessor to maintain fire insurance *and/or excepted fire damages in the yield-up clause*." (*Id*. at p. 319.) In this case, fire damage *is* excepted in the yield-up clause, meaning that under the terms of the lease, defendants must return the premises in substantially the same condition as at the commencement of the lease except in the case of fire damage or other casualty.

Western Heritage also relies on *Praetorian Financial Ins. Co. v. United States* (N.D. Cal. June 4, 2008) No. C07-05746 SBA, 2008 WL 2331926 (*Praetorian*),[6] in which the court applied California law and denied the tenants' motion to dismiss the subrogation action of the landlord's insurer. Distinguishing *Parsons*, *supra*, 156 Cal.App.3d at page 1155, the court in *Praetorian* concluded the parties to the lease did

---

[6] It does not violate the California Rules of Court to cite an unpublished federal opinion. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18; Cal. Rules of Court, rule 8.1115.) They may be persuasive, although not binding, authority. (*Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 251, fn 6.)

not intend the fire insurance in that case to inure to tenants' benefit as a matter of law where the lease differed from *Parsons* in two important respects: (1) its yield-up provision required notice to the tenants before they were obligated to restore the premises to the same conditions as that existing at the beginning of the lease; and (2) the yield-up provision excepted only ordinary wear and tear and damages beyond the tenants' control. (*Praetorian*, *supra*, 2008 WL 2331926, * 1, *7.)  "Thus, while Parson's yield-up provision supported barring subrogation arising from fire damage, the Tenants' yield-up provision only supports barring subrogation arising from fire damage *caused by circumstances beyond their control*, which is not the case here." (*Id*., at p. *7.)  This provision "trumped" other portions of the lease exempting the tenants from having to repair damages caused by fire: "Reading all three paragraphs [of the lease] together, the Tenants need not repair fire damage due to any cause, which damage must be repaired by Landlord; but, at yield-up, the Landlord has the right to require the Tenants to repair any fire damage *they* caused. . . . As such, unlike Parsons' lease, the Lease here lacks sufficient 'hints' for the Court to find the Landlord procured fire insurance for it and the Tenants' benefit." (*Id*. at p. *8.)

*Praetorian* is distinguishable because it involved lease terms unlike those in *Parsons*.  The lease in our case, particularly when considered in light of the CC&Rs, is more like *Parsons* than *Praetorian*.  It requires that subrogation be denied in this case.

Western Heritage argues that in pursuing subrogation it stands in the shoes of the Association, who purchased the fire policy, rather than de Carion.  It notes that de Carion is listed as an additional insured only under the commercial liability section of the policy, not under the first-party fire coverage, and cites the rule that a subrogation claim may proceed against an insured for a loss that is not covered by the policy.[7]  (See *Truck Ins.*

---

[7]     Endorsement No. CG 20 04 1185 provides, "This endorsement modifies Insurance provided under the following: [¶] COMMERCIAL GENERAL LIABILITY COVERAGE PART [¶]  WHO IS AN INSURED (Section II) is amended to include as an insured each individual unit owner of the insured condominium, but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy."

*Exchange v. County of Los Angeles* (2002) 95 Cal.App.4th 13, 21–23.)  But whether or not de Carion was named as an insured under the first party fire provisions, the CC&Rs, which formed a contract between de Carion and the Association (see *Franklin v. Marie Antoinette Condominium Owners Assn.* (1993) 19 Cal.App.4th 824, 828), contemplated that he would be.  They also provided that in any such policy, the Association secure a waiver of any right the insurance company might have to a subrogation action against the owners or tenants of the project.  It would be inequitable under these circumstances to treat the Association as the sole insured for purposes of Western Heritage's right to bring a subrogation action to recover amounts paid under its fire policy.[8]

Western Heritage also relies on Civil Code section 6858, subdivision (b), which provides that a common interest association has standing to proceed without joining its members in an action for damage to the common area.  That the Association might have legal standing to proceed in such an action without de Carion or other members does not answer whether de Carion is an insured under the Western Heritage policy or whether Western Heritage has established all elements necessary for an equitable subrogation action against defendants.

Western Heritage argues that under the doctrine of superior equities, it should be allowed to proceed with a subrogation action because it has superior equities to the allegedly negligent defendants.  It relies on *State Farm*, *supra*, 143 Cal.App.4th at page 1098, in which the court reaffirmed this *defensive* doctrine:  "Under the doctrine of superior equities, although an insurer might have a subrogation interest in the insured's

Endorsement CG 20 11 04 13 makes Surfwood Properties an additional insured and modifies the Commercial General Liability Coverage Part.
[8]     Although a homeowners' association has a complex and fiduciary relationship with its members (*Kovich v. Paseo Del Mar Homeowners' Assn.* (1996) 41 Cal.App.4th 863, 867; *Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, 650–651), with respect to its duty to purchase insurance and undertake other business activities for the benefit of unit owners, the association has been found to occupy the position of "landlord" of the project.  (*Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, 262; *O' Connor v. Village Green Owners Assn.* (1983) 33 Cal.3d 790, 796; *Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.* (2003) 110 Cal.App.4th 120, 126–127.)

claim against the party that caused the loss, it cannot enforce its subrogation rights unless it has equities superior to those of the wrongdoer." (*Id*. at p. 1108.) In that case, the court reversed an order granting summary judgment in favor of a third party in a subrogation action who allegedly allowed a fire to negligently spread. (*Id.* at p. 1119). As the trial court in this case noted, the equities are different when the third party is not the party to any agreement with the insured, but is simply a neighbor. Here, the allegedly negligent party is also a party to a lease that on its face contemplates that fire insurance will be procured by the lessor. This changes the equities considerably.

It is not necessary to consider the extrinsic evidence offered by Western Heritage that the rent was set using fair market value per foot and did not earmark a set amount toward the insurance payment. Extrinsic evidence may be admitted to explain the meaning of an ambiguous contract, but cannot be admitted to show the parties' intention independent of an unambiguous written instrument. (See *In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1440; *Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 15.) We do not find the contract between de Carion and defendants to be ambiguous on the issue of which of the two parties would obtain fire insurance. Moreover, the evidence was immaterial to the question of whether the parties intended the existing Western Heritage insurance policy to be for the benefit of defendants. While a provision in a lease that insurance will be paid for by the lessee may suggest that the insurance is for the benefit of the lessee (see *Chapin*, *supra*, 189 Cal.App.2d at p. 618–622), the converse is not necessarily true. A lessee pays for insurance through his or her rent and there is no requirement that a specific amount of the rent be allocated for insurance for an intent to benefit the lessee to be shown.

### III. DISPOSITION

The summary judgment is affirmed. Ordinary costs on appeal are awarded to defendants/respondents.

15

_____

NEEDHAM, J.

We concur.

_____

SIMONS, ACTING P.J.

_____

BURNS, J.

(A152428)

Filed 4/2/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| WESTERN HERITAGE INSURANCE COOMPANY,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>FRANCES TODD INC., et al.,<br><br>      Defendants and Respondents. | A152428<br><br>(Alameda County<br>Super. Ct. No. RG 14742991)<br><br>**[ORDER CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGEMENT]** |

THE COURT:[***]

The opinion in the above-entitled matter filed on March 4, 2019, was not certified for publication.

For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Date_____            _____Acting P.J.

---

[***] SIMONS, Acting P.J., NEEDHAM, J., BURNS, J.

1

Superior Court of Alameda County, No. RG 14742991, Paul D. Herbert, Judge.

Cozen O'Connor, Michael V. Ruocco, Valerie Rojas; Sparks & Associates, Jeffrey C. Sparks; Donohue Fitzgerald, William Hill for Plaintiff and Appellant.

Wood, Smith, Henning & Berman, David S. Webster, Eugene Zinovyev for Defendant and Respondents.