Filed 6/10/25  Blumberg v. Stroma Medical Corp. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| SAMUEL BLUMBERG, | |
| Plaintiff and Appellant, | G062786 |
| v. | (Super. Ct. No. 30-2020-01172565) |
| STROMA MEDICAL CORPORATION et al., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |
| Defendants and Appellants. | |

It is hereby ordered that the opinion filed herein on May 14, 2025, be modified as follows:

1. On page 3, the last sentence of the first partial paragraph is deleted and replaced with the following: "We find substantial evidence supports the jury's findings of malice. We determine the amounts of punitive damages awarded by the jury are not excessive."

2. On page 3, at the conclusion of the revised last sentence of the first partial paragraph, add following footnote, numbered footnote 2:

"[2] Respondents suggested in a petition for rehearing that, although we find the punitive damage awards are not constitutionally infirm vis-à-vis the corrected amount of damages on the conversion claim, we should return the issue of punitive damages to the trial court to determine if the punitive damage awards are excessive for some other reason. But the *only* reason respondents argued the punitive damages awards are excessive—both in their motion for new trial in the trial court and their briefing on appeal—is that punitive damages totaling approximately 4.3 times the amount of compensatory damages are just too high. They do not argue the amount of punitive damages is unwarranted based on the nature of the wrongdoing or that it is disproportionate compared to respondents' ability to pay. They make no other argument and point to no other facts to support their excessiveness argument. We find the punitive damage awards are not unconstitutionally disproportionate. Accordingly, there is nothing further for the trial court to evaluate on the issue of whether the punitive damages award is excessive, and returning the matter to the trial court would be a futile act."

3.   On page 6, the phrase "just weeks" is deleted from the second line of the last partial paragraph.

There is no change in judgment.

Respondent's petition for rehearing, filed May 28, 2025, is DENIED.


GOODING, J.

WE CONCUR:


O'LEARY, P. J.


SCOTT, J.

Filed 5/14/25  Blumberg v. Stroma Medical Corp. CA4/3 (unmodified opinion)


NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAMUEL BLUMBERG,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>STROMA MEDICAL CORPORATION et al.,<br><br>Defendants and Appellants. | G062786<br><br>(Super. Ct. No. 30-2020-01172565)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kimberly A. Knill, Judge. Affirmed in part, reversed in part, and remanded.

Law Offices of Paul P. Cheng & Associates and Paul P. Cheng for Plaintiff and Appellant.

Grodsky, Olecki & Puritsky and Allen B. Grodsky for Defendants and Appellants.

For a little more than four years, plaintiff Samuel Blumberg worked for defendant Stroma Medical Corporation (Stroma), first as a consultant and then as a full-time employee. His compensation consisted almost entirely of options to purchase Stroma stock. In addition, Blumberg loaned Stroma a total of $130,100, evidenced by five convertible notes (Notes). Each note provided it would automatically convert to Stroma stock upon the occurrence of a defined equity financing event.

Blumberg ultimately left his job at Stroma, and the method of his departure angered Gregg Homer, Stroma's chairman of the board and chief scientific officer. Although Blumberg exercised his options and the triggering financing event specified in the Notes occurred, Stroma did not issue Blumberg any stock. Blumberg sued Stroma and Homer for breach of contract and conversion.[1]

After a jury awarded Blumberg more than $2.4 million in damages, Stroma and Homer (collectively, Defendants) moved for a new trial and for judgment notwithstanding the verdict (JNOV). The trial court denied the JNOV motion as to the breach of contract claim but granted it as to the conversion claim. Both Blumberg and Stroma appealed.

Blumberg appeals the order granting JNOV on the conversion claim. We reverse that order and the resulting judgment.

Defendants appeal the order denying JNOV on the breach of contract claim regarding the Notes. We affirm that order.

Defendants also appeal the jury's award of damages on the conversion claim and award of punitive damages. We agree the damages on

_____

[1] Blumberg also sued Douglas Daniels, Stroma's CEO. The jury found in Daniel's favor on Blumberg's claims.

2

the conversion claim were unsupported by the evidence and reverse and remand that award in part. We affirm the punitive damages award.

FACTS

I.

BLUMBERG'S STOCK OPTIONS

In June 2012, Blumberg began working as a consultant for Stroma, a start-up medical device company developing a technology to change the color of people's eyes from dark to light. Blumberg's consultancy was governed by a written agreement (Consulting Agreement) specifying he would be paid for his work with an option to purchase 27,235 shares of Stroma stock, which would vest during the period of the Consulting Agreement.

Between June 1, 2013 and September 30, 2016, the Consulting Agreement was amended six times. With each amendment, the amount of the stock option grant increased. In total, as compensation for his consulting work, Blumberg received an option to purchase 130,905 shares of Stroma's common stock. By the terms of the Consulting Agreement, the option had a term of "10 years, subject to earlier expiration in the event of the termination of [Blumberg's] services hereunder (provide [sic] that the term of the Option shall be no less than two years unless [Blumberg's] services hereunder are terminated for cause)." The option also was subject to the terms of Stroma's 2009 stock plan and standard form stock option agreement, which gave Blumberg only three months after the termination of his service to exercise the option. The only compensation Blumberg received for his work as a consultant with Stroma was the stock option grant.

In October 2016, Blumberg changed from consultant to full-time employee. Under the terms of his written employment agreement

(Employment Agreement), Blumberg was compensated with an additional stock option for 25,941 shares, which would vest over the first 12 months of his employment. Blumberg also received a base salary of $18,000 per year and was eligible for incentive bonuses. The option provided for in the Employment Agreement had a term of "10 years, subject to earlier expiration in the event of the termination of your services." Like the option in the Consulting Agreement, it also was subject to Stroma's 2009 stock option plan, which gave Blumberg only three months after the termination of his service in which to exercise the option.

Blumberg's employment with Stroma ended in March 2017. Homer was unhappy with the manner of Blumberg's departure, which Homer believed injured the company. The parties entered into a severance agreement on March 17, 2017 (Severance Agreement) that, among other things, specified Blumberg would "retain all stock options covering shares in [Stroma] and vested" as of March 7, 2017. The Severance Agreement did not specify any expiration date.

Whether the exercise period was three months, two years, or ten years, Blumberg timely exercised both options. He testified he exercised the consulting option when he transitioned to an employee by executing and delivering the exercise agreement attached as an exhibit to Stroma's 2009 stock plan. Blumberg also testified that, several days before the Severance Agreement was finalized, he spoke directly with Douglas Daniels, the CEO of Stroma, who signed a writing prepared by Blumberg, which asked that all his options be exercised and the exercise cost be paid out of the indebtedness Stroma owed Blumberg on the Notes. By the terms of the writing, Daniels agreed to the request when he signed it.

## II.

### BLUMBERG LOANED MONEY TO STROMA
### THROUGH A SERIES OF CONVERTIBLE NOTES

Between April 2013 and December 2016, Blumberg loaned $130,100 to Stroma through a series of five convertible notes (in the amounts of $50,000, $25,000, $15,000, $30,000, and $10,100). The Notes' maturity dates ranged from October 24, 2017 to December 14, 2019.

## III.

### STROMA DID NOT ISSUE BLUMBERG ANY SHARES PURSUANT TO THE OPTIONS
### AND DID NOT REPAY THE NOTES

Blumberg believed any rights he had under the stock options would expire on March 6, 2019—two years after his last day of work at Stroma (the deadline set forth in the Consulting Agreement). So, on February 28, 2019, Blumberg sent an email to Daniels asking about the options. Stroma had not issued Blumberg any shares of stock and had neither repaid nor converted the four Notes that had come due by the date of the email.

Five days later, on March 5, 2019, Blumberg sent another email to Daniels, again expressing his concern about the options. Blumberg also sent Daniels a text message and left four voicemail messages. Rather than responding to the substance of the communications, Daniels directed Homer to respond to Blumberg and, after the close of business on March 6, 2019, sent Blumberg a brief message directing him to communicate with Homer.

More than a month later, Homer finally responded to Blumberg's communications. Homer informed Blumberg he had lost any right to exercise the options by failing to comply with certain terms of the Severance Agreement and, further, denied Blumberg had ever submitted an executed exercise agreement. He concluded with the following: "As you know, I'm not

happy with the manner in which you handled your departure. It had a negative impact on the company and frustrated some of our key administrative and quality control activities. If you'd like to exercise the Options and are able to pay the $9,658.32 purchase price, I will ask the Stroma Board to extend the exercise date to permit you to do so. If you would like to exercise the Options, but are unable to pay the purchase price, please let me know, and I'll see whether we can work something out." Homer reached out to Blumberg again on May 13, 2019 and June 27, 2019. In the latter email, Homer said that regardless of what happened with the options, the Notes would convert "in accordance with the terms of the note documents."

Blumberg did not respond to Homer's communications because he did not believe Homer was the right person to handle the situation and, further, he did not trust Homer based on past experience.

The last of Blumberg's Notes came due on December 14, 2019. That date came and went, but none of the Notes were repaid or converted to stock. Further, Blumberg still had not received any of the stock option shares.

IV.

BLUMBERG'S LAWSUIT

On November 4, 2020, Blumberg filed a lawsuit against Stroma, Daniels, and Homer alleging, among other things, breach of contract and conversion.

According to the terms of the Notes, any indebtedness under the Notes would automatically convert to shares of common stock upon the closing of an equity financing of at least $5 million—an event defined in the Notes as a "Fully Qualified Financing." On December 17, 2020, just weeks after Blumberg filed his lawsuit, Stroma sent a written notice to Blumberg's

6

counsel, informing Blumberg that a fully qualified financing was upcoming and asking if Blumberg wished to convert the Notes into shares of Stroma stock.[2] Somewhat contradictorily, the letter also stated Stroma believed it did not owe Blumberg anything under the Notes. The letter outlined two alternatives—converting the indebtedness to shares or repayment of the Notes—and demanded Blumberg agree to one of them by countersigning the letter and returning it to Homer no later than December 31, 2020.

The letter did not accurately reflect either the dates or amounts of the Notes. Additionally, it contained language that Blumberg's counsel believed might affect the ongoing lawsuit. Accordingly, Blumberg's counsel asked Stroma to correct the dates and amounts and address the potentially problematic language. Stroma's counsel and Blumberg's counsel communicated several times but were unable to reach an agreement, and Blumberg did not countersign Stroma's demand.

The fully qualified financing event closed on March 31, 2021. In connection with the event, Stroma filed an amended and restated certificate of incorporation with the Delaware Secretary of State, which specified the number of shares authorized for issuance in connection with the financing event. Because Blumberg had not "elect[ed]" to convert the indebtedness to shares by signing Stroma's problematic letter, Stroma did not authorize any shares for Blumberg. Instead, on April 30, 2021, Stroma sent Blumberg a check for payment of the Notes consisting of $130,100 in principal and $88,800.13 in interest. Blumberg returned the check.

---

[2] Stroma sent similar letters to other noteholders.

7

# V.

## TRIAL AND JUDGMENT

Blumberg's breach of contract and conversion claims were tried to a jury in January and February 2023. Trial was conducted in two phases: liability and damages. At the end of the liability phase, the jury returned a verdict finding (1) Stroma breached the Notes; (2) Stroma breached the Consulting and Employment Agreements (collectively, Agreements); and (3) Stroma and Homer converted Blumberg's shares. The jury further found Stroma and Homer acted with oppression, fraud, or malice.[3]

At the end of the damages phase, the jury returned a verdict totaling $2,414,852 in Blumberg's favor, consisting of $270,130 for breach of the Notes; $326,596 for breach of the Agreements; $650,000 for conversion; $1,000,000 in punitive damages against Stroma; and $168,126 in punitive damages against Homer.

Stroma filed motions for a new trial and JNOV. The trial court denied Stroma's motion for new trial but granted Stroma's motion for JNOV on the conversion claim, which eliminated the $650,000 award of damages for the conversion. Because the award of punitive damages was based on the conversion claim, the court also granted Stroma's motion for JNOV as to the

---

[3] The jury also found in Blumberg's favor on Stroma's claim that Blumberg breached his Severance Agreement.

award of punitive damages.[4] Blumberg timely appealed the court's ruling and asked that we restore the jury's finding of conversion, the award of damages for conversion, and the award of punitive damages.

Stroma also appeals, asking us to reverse the trial court's denial of its motion for JNOV on the claim for breach of the Notes, the jury's award of damages on the conversion claim, and the award of punitive damages.

DISCUSSION

I.

BLUMBERG'S APPEAL

A. *Standard of Review*

"A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. [Citation.] [¶] The moving party may appeal from the judgment or from the order denying the motion for judgment notwithstanding the verdict, or both. [Citation.] As in the trial court, the standard of review is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion." (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) "If the appeal challenging the denial of the motion for [JNOV]

_____

[4] The trial court also determined the jury incorrectly used a preferred share price rather than a common share price in calculating the fair market value of the stock for breach of the Agreements and conditionally granted Stroma's motion for new trial on that ground. The court gave Blumberg the option of remittitur and on June 2, 2023, the parties filed a "stipulation re: remittitur" reducing the damages for breach of the Agreements to the court's calculation of $22,825.03.

9

raises purely legal questions, however, a review is de novo." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138.)

*B. Conversion*

It is "well settled in California that shares of corporate stock are subject to an action in conversion." (*Mears v. Crocker First Nat. Bank* (1948) 84 Cal.App.2d 637, 644; see *Ralston v. Bank of California* (1896) 112 Cal. 208, 213 ["'where a corporation refuses to allow a transfer of shares upon its books, the assignee may treat this as a conversion of his shares, and sue the company for their value'"].) To establish a claim for conversion of the shares, Blumberg had to show (1) he had ownership or right to possession of the shares; (2) defendants interfered with his possessory interest in the shares; and (3) he suffered damages because of the interference. (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150.) Conversion is a strict liability tort; wrongful intent or motive are not required. (*Ibid.*)

In the liability phase of the trial, the jury returned a special verdict finding (1) Blumberg had a right to the shares of Stroma stock;[5] (2) Stroma and Homer substantially interfered with Blumberg's interest in the shares by knowingly or intentionally preventing Blumberg from obtaining them; (3) Blumberg did not consent to the interference; and (4) Blumberg was harmed by the interference.

In its motion for JNOV, Stroma challenged the jury's findings, arguing Blumberg did not have an immediate right to possession of the

---

[5] At Stroma's request, the special verdict did not differentiate between shares under the Agreements and shares under the Notes.

shares and therefore could not succeed on his conversion claim.[6] The trial court granted Stroma's motion for JNOV on somewhat different grounds, finding Blumberg could not recover tort damages through a conversion claim for conduct amounting to a breach of contract. The trial court was wrong about that. "'[T]he same wrongful act may constitute both a breach of contract and an invasion of an interest protected by the law of torts.'" (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 551.) Further, the California Supreme Court has repeatedly stated that tort damages are available where a breach of contract is accompanied by conversion. (*See Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 31, italics added ["'"'a tortious breach of contract . . . may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or *conversion*'"'"]; *Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990 [same]; *Erlich v. Menezes, supra,* 21 Cal.4th at pp. 553–554 [same].) Because conversion damages are available for breach of contract where the elements of conversion are present, we return to the question raised by Stroma in its motion for JNOV, i.e., whether Blumberg established his claim of conversion.

---

[6] Both Stroma's motion and the trial court's ruling relied on *Imperial Valley L. Co. v. Globe G. & M. Co.* (1921) 187 Cal. 352 (*Imperial Valley*), and *La Jolla Cove Investors, Inc. v. Sultan Corp.*, (S.D.Cal., Oct. 17, 2011, case No.11cv1628) 2011 U.S.Dist. Lexis 119744 (*La Jolla Cove*). *Imperial Valley* rejected the plaintiff's claim of conversion because the underlying agreement between the parties did not give the plaintiff any right to the allegedly converted items. (*Id.* at pp. 354–361.) *La Jolla Cove* misinterpreted *Imperial Valley* as standing for the proposition that tort damages under a claim of conversion are not available for breaches of contract. (*La Jolla Cove, supra*, at pp. *2–*8.)

11

*C. Blumberg's Ownership or Right to Possession under the Agreements*

Blumberg's option to purchase the 130,905 shares he earned as a consultant had been approved and fully vested by the time Blumberg became an employee. Blumberg testified he exercised that option by submitting the agreement attached as an exhibit to the Stroma 2009 stock plan when he transitioned to full-time employment. In addition, about half of the 25,941 options granted in Blumberg's Employment Agreement had vested by Blumberg's last day of work on March 7, 2017. Blumberg testified he exercised those options as well, and on March 9, 2017, Daniels signed a document acknowledging *all* of Blumberg's options had been exercised.

Substantial evidence supports the jury's finding that Blumberg exercised his options under the Agreements and therefore had ownership or right to possession of the shares as of March 9, 2017.

*D. Blumberg's Ownership or Right to Possession Under the Convertible Notes*

Blumberg's ownership or right to possession of shares under the Notes was governed by the terms of the Notes. "The interpretation of a contract is a question of law subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence." (*Western Heritage Ins. Co. v. Frances Todd, Inc.* (2019) 33 Cal.App.5th 976, 983.) The fundamental goal in interpreting any contract is to "give effect to the mutual intent of the parties as it existed at the time of contracting." (Civ. Code, § 1636.)[7] If the contract is in writing, "the intention of the parties is to be ascertained from the writing alone, if possible." (§ 1639.) The words used in the contract "are to be understood in their ordinary and popular sense."

_____

[7] All further statutory references are to the Civil Code.

12

(§ 1644.) The entirety of the contract is to be considered together, giving effect to every part. (§ 1641).

Each of the Notes specified that "[u]pon the consummation of [a Fully Qualified Financing], all Indebtedness under this Note shall *automatically* convert into shares of the class of equity securities as are issued in the Fully Qualified Financing . . . ."[8] (Italics added.) Stroma admitted at trial that a fully qualified financing occurred on March 31, 2021.

The word automatic means "largely or wholly involuntary," "done spontaneously or unconsciously," and "having a self-acting or self-regulating mechanism." (Merriam-Webster Dict. Online (2025) <https://www.merriam-webster.com/dictionary/automatic> [as of April 11, 2025] archived at: <https://perma.cc/38QS-C6JJ>.) Thus, based on the plain language of the Notes, the indebtedness under the Notes converted into shares on March 31, 2021, without any further action by Blumberg or Stroma. Blumberg had ownership or right to possession of the shares as of that date, thereby satisfying the first element of his conversion claim.

E. *Defendants' Interference with Blumberg's Ownership or Right to Possession*

Defendants argue the failure to authorize the issuance of shares to Blumberg did not interfere with Blumberg's ownership or right to possession of the shares. The argument has no merit.

"Conversion requires the defendant to take some affirmative action to exercise dominion over or *deprive* a plaintiff of his or her property." (*Archer v. Coinbase, Inc.* (2020) 53 Cal.App.5th 266, 276, italics added.)

---

[8] As defined in the Notes, "'[i]ndebtedness'" is "an amount equal to the then-outstanding principal amount of [the] Note and any unpaid accrued interest [t]hereon."

Although Blumberg had ownership or right to possession of shares of Stroma's stock, Defendants deliberately failed to identify Blumberg as a shareholder in the amended and restated certificate of incorporation, thereby interfering with Blumberg's ownership or right to possession. Substantial evidence supports the jury's finding of interference.

## F.  Resulting Damage

Defendants argue Blumberg was barred by the economic loss rule from recovering damages for conversion. The economic loss rule "'prevents the erosion of contract doctrines by the use of tort law to work around them.'" (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 923.) However, as set forth above, tort damages are available for a conversion that accompanies a breach of contract. (*Rattagan v. Uber Technologies, Inc., supra,* 17 Cal.5th at p. 31.) Accordingly, at a minimum, Blumberg was entitled to recover "the value of the [Notes] at the time of the conversion, with the interest from that time," which the jury valued at $270,130 in connection with the breach of contract claim and which amount was available on both claims. (Civ. Code, § 3336.) The argument that Blumberg could not, as a matter of law, establish conversion damages has no merit.

The trial court's ruling granting Defendants' motion for JNOV as to Blumberg's conversion claim is reversed. The resulting ruling granting Defendants' JNOV motion as to punitive damages also is reversed.

II.

STROMA'S APPEAL

## A.  Breach of the Notes

Defendants ask us to reverse the trial court's order denying their motion for JNOV as to the breach of the Notes. They argue Blumberg's claim that the Notes were breached must fail because Blumberg did not satisfy

14

certain conditions precedent required to convert the Notes to shares, specifically (1) Blumberg did not sign certain documents relating to the fully qualified financing event; (2) he did not physically surrender his Notes; and (3) he did not give Stroma notice of default and an opportunity to cure. We are not persuaded by any of these arguments.

### 1. Document signing

Stroma claims Blumberg had to sign certain of the financing documents as a condition precedent to converting the Notes to shares. "'The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract. [Citation.]' [Citation.] But 'stipulations in an agreement are not to be construed as conditions precedent unless such construction is required by clear, unambiguous language; and particularly so where a forfeiture would be involved or inequitable consequences would result. [Citations.]' [Citations.] Because 'such conditions are not favored by the law, [they] are to be strictly construed against one seeking to avail [it]self of them. [Citations.]'" (*JMR Construction Corp. v. Environmental Assessment & Remediation Management, Inc.* (2015) 243 Cal.App.4th 571, 593–594.) No signature was required.

In interpreting the Notes under the de novo standard of review, we conclude they did not require Blumberg to sign any of the financing documents. As we found above, under the terms of the Notes, any indebtedness *automatically* converted into shares upon the occurrence of the fully qualified financing. No action by Blumberg was required to convert the

15

indebtedness into shares of stock.[9] Moreover, according to the plain language of the Notes, Blumberg became a party to the financing upon the closing of the fully qualified financing event, without the need of signature. Each of the Notes read, in pertinent part: "If this Note is converted pursuant to this Section 3, then the Holder *shall be* a party to the purchase agreement and other ancillary agreements related to the Qualified Financing,[10] and *shall be* entitled to all the rights, preferences and privileges granted by the Company to other purchasers of Qualified Securities as a result of such financing." (Italics added.)

### 2. Surrender of the Notes

Defendants also claim Blumberg was required to surrender his endorsed Notes as a condition precedent to converting the Notes to shares. This argument is based on a section of the Notes entitled, "Mechanics of Conversion," which asks the noteholder to physically surrender a "duly endorsed" note to Stroma's principal corporate office or another specified location at least one day prior to the automatic conversion. As set forth above,

---

[9] Stroma also argues it could not be found liable for not delivering the shares to Blumberg because (1) the Notes provide that Stroma's obligation to issue conversion shares is conditioned on the compliance of such issuance with applicable federal and securities laws; (2) no shares were issued for Blumberg under Delaware law; and (3) Stroma therefore could not have legally issued shares to Blumberg. This argument has an obvious logical flaw, i.e., the reason no shares were issued for Blumberg pursuant to Delaware law was that Stroma refused to *authorize* Delaware to issue shares for him when it filed its amended certificate of incorporation in Delaware. Stroma's wrongful failure to authorize the issuance of shares for Blumberg certainly cannot excuse its failure to deliver shares to him.

[10] A "'Qualified Financing'" is defined to include a fully qualified financing.

16

however, the Notes converted automatically upon the closing of the financing. Even if that were not so and a paragraph addressing the mechanics of conversion could be interpreted as a condition precedent, the jury specifically found Blumberg did "all, or substantially all, of the significant things that the [Notes] required him to do."

"[W]e review a jury's factual findings for substantial evidence. We will reverse a jury's verdict only if it is unsupported by any substantial evidence, meaning to prevail on appeal defendants must show that the evidence was such as would justify a directed verdict in their favor." (*Mathews v. Happy Valley Conference Center, Inc.* (2019) 43 Cal.App.5th 236, 251.) This finding was supported by substantial evidence as to surrender of the Notes because there was evidence Stroma was already in possession of Blumberg's original Notes, so there was nothing to surrender, and Homer testified that none of the other noteholders were required to physically surrender their notes.

3. Notice of Default

Finally, Defendants argue Blumberg was required to provide Stroma with a notice of default and an opportunity to cure before bringing any claim for breach of contract. This argument is based on section 4.1.2 of the Notes, which states Stroma cannot be in default, regardless of any breach of the Notes, until it is given written notice and 10 days in which to cure the breach. Section 4.2 does not specify any required form of notice.

""Forfeitures are not favored by the courts, and, if an agreement can be reasonably interpreted so as to avoid a forfeiture, it is the duty of the court to avoid it."" (*VFLA Eventco, LLC v. William Morris Endeavor Entertainment, LLC* (2024) 100 Cal.App.5th 287, 308.) To the extent notice

17

was required, Blumberg provided notice through his communications and by filing his lawsuit. Stroma took no steps to cure the breach.

## B. *Waiver*

Defendants argue Blumberg waived any claim—and/or was estopped from claiming—that Stroma breached the Notes by his failure to elect conversion under the Notes. As set forth above, the Notes specifically provide any indebtedness *automatically* converts to shares upon a fully qualified financing. Blumberg was not required to make an election. He did not waive his right to claim a breach by failing to do something that was not required.[11]

## C. *Damages for Conversion*

The jury awarded Blumberg $650,000 in damages on his claim for the conversion of his shares. Defendants argue this award is unsupported and excessive. "'Whether a plaintiff "is entitled to a particular measure of damages is a question of law subject to de novo review. [Citations.] The amount of damages, on the other hand, is a fact question . . . [and] an award of damages will not be disturbed if it is supported by substantial evidence.'"" (*Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1324.)

"The detriment caused by the wrongful conversion of personal property is presumed to be: [¶] First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree

---

[11] Stroma also argues it did not breach the Notes because it sent Blumberg a check for the principal and accrued interest owed under them. The Notes, however, required that the indebtedness be *automatically converted to shares*, not that the indebtedness be repaid.

of prudence on his part would not have averted; and [¶] Second—A fair compensation for the time and money properly expended in pursuit of the property." (§ 3336.) Accordingly, the jury was instructed Blumberg could recover the fair market value of the stock at the time of the conversion (which the jury determined on the breach of contract claim amounted to $270,130) and "[r]easonable compensation for the time and money spent by Blumberg in attempting to recover the stock."[12] However, the jury was also instructed not to include any amount awarded for breach of the Notes, i.e., the fair market value of $270,130 awarded for breach of the Notes, as damages for the conversion. Given that direction, the $650,000 the jury awarded on the conversion claim was, presumably, limited to compensation for the time and money Blumberg spent to recover the shares. "'To entitle a party to such compensation the [evidence] should tend to show that money was properly paid out and time properly lost in pursuit of the property, and how much.' [Citation.] Such evidence should be definite and certain." (*Haines v. Parra* (1987) 193 Cal.App.3d 1553, 1559; see *Yaffee v. Skeen* (2024) 106 Cal.App.5th 1281, 1316 ["'The rule is established that the plaintiff has the burden of proving, with reasonable certainty, the damages actually sustained by him as a result of the defendant's wrongful act, and the extent of such damages must be proved as a fact'"].)

At trial, however, Blumberg did not present any evidence of money paid out or time lost in his pursuit of the shares. He testified only that

_____

[12] "'Regardless of the nature or number of legal theories advanced by the plaintiff, he is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence. [Citation.] Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited.'" (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 702.)

19

he did not get a job after he left Stroma but instead "took out loans [of $200,000] to live on and enable [him] to put [his] time and efforts into pursuing living, and as a separate matter making this case work."[13] We therefore conclude the jury's award of $650,000 as the value of the time and money spent by Blumberg in recovering the Notes is not supported by the evidence and reverse that portion of the judgment. Because Blumberg was entitled to $270,130 as the fair market value of the Notes on either the conversion or the breach of contract claim, however, we remand for the trial court to correct the judgment to so reflect.

D. *Punitive Damages*

Because Blumberg was entitled to stock valuation damages on his claim of conversion, punitive damages were available. (*Krusi v. Bear, Stearns & Co.* (1983) 144 Cal.App.3d 664, 678 ["There is no question that punitive damages may be recovered in an action for conversion"].)

Defendants argue Blumberg is not entitled to punitive damages because he failed to establish oppression, fraud, or malice. (§ 3294, subd. (a).) Where such a challenge is made, we "'inquire whether the record contains "substantial evidence to support a determination by clear and convincing evidence . . . ."'" (*Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1299.) "[W]e review the evidence in the light most favorable to the [plaintiff], give [him] the benefit of every reasonable inference, and resolve all conflicts in [his] favor, with due attention to the heightened standard of proof." (*Ibid.*)

Punitive damages are available where a defendant has acted with oppression, fraud, or malice. (§ 3294, subd. (a).) "[C]onduct which is intended

---

[13] Blumberg testified he could have made between $150,000 and $200,000 a year, but the court ordered that testimony stricken as hearsay. Blumberg does not appeal this ruling.

by the defendant to cause injury to the plaintiff" is malice within the meaning of the statute. (§ 3294, subd. (c)(1).) "'Malice may be proved either expressly through direct evidence or by implication through indirect evidence from which the jury draws inferences. [Citation.]'" (*Pfeifer v. John Crane, Inc., supra,* 220 Cal.App.4th at p. 1299.)

The jury received substantial evidence from which it could conclude that Stroma and Homer engaged in conduct designed to injure Blumberg. In early March 2019—two years after Blumberg's departure from Stroma—Blumberg repeatedly reached out with questions about the stock options he had exercised two years before. Rather than responding promptly, Homer waited to respond until after a potential expiration date for the options had passed. In his response, Homer, an officer of Stroma, told Blumberg he did not have any rights to the stock options, even though they were the only compensation for Blumberg's many years of service with Stroma as a consultant and the primary compensation for his service as an employee. Homer also said that even if Blumberg had retained his stock option rights, they had to have been exercised before March 16, 2019 (a date after Blumberg reached out, but before Homer's response), and falsely asserted Blumberg had not done so.

In a subsequent letter, Homer reassured Blumberg the convertible Notes were unaffected by the stock options dispute, so Blumberg would still "receive the shares into which those notes convert in accordance with the terms of the note documents." Yet, more than a year later, Homer sent Blumberg a letter specifically denying Stroma owed Blumberg anything under the Notes, but expressing concern that, because Stroma might have to pay something in connection with Blumberg's lawsuit, it would consider converting the Notes. In the same letter, Homer falsely informed Blumberg

21

the indebtedness under the Notes would not convert into Stroma stock without an express, written agreement, and he asked Blumberg to elect, in writing, to the conversion and agree to execute unidentified documents and undertake unspecified acts in connection with the conversion. When Blumberg failed to agree to the unnecessary election, Stroma deliberately excluded him from any shares when it filed its amended certificate of incorporation.

The availability of punitive damages rests on the tortfeasor's alleged motive. (*Long Beach Memorial Medical Center v. Kaiser Foundation Health Plan, Inc.* (2021) 71 Cal.App.5th 323, 339.) The evidence admitted at trial was easily sufficient to support the jury's finding that Stroma's and Homer's motive was to injure Blumberg and, accordingly, a finding of malice.

Stroma also argues the $1 million in punitive damages awarded against Stroma and the $168,126 in punitive damages awarded against Homer are excessive when compared to the amount of compensatory damages awarded. "There is no mathematical formula or bright-line ratio that a punitive damages award cannot exceed. [Citation.] Single-digit multipliers, however, such as the one applied here, 'are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution.' [Citation.] The California Supreme Court has concluded that an appropriate maximum ratio between punitive and compensatory damages beyond which punitive damages in a given case would be excessive, and therefore unconstitutionally arbitrary, is '10 times the compensatory award.'" (*Zirpel v. Alki David Productions, Inc.* (2023) 93 Cal.App.5th 563, 580.) Following the stipulated remittitur, Blumberg was harmed by the conversion in the amount of $270,130 (the stock valuation of the Notes). Punitive damages of

approximately three times that amount from Stroma and less than that amount from Homer are not excessive.

## DISPOSITION

The judgment is affirmed in part, reversed in part, and remanded. The order granting the motion for JNOV on the conversion claim is reversed. The order denying the motion for JNOV on the breach of the Notes is affirmed. We find the jury's award of $650,000 on the conversion claim is not supported by the evidence and reverse. However, we remand for the trial court to amend the judgment to reflect that Blumberg is entitled to $270,130 as the fair market value of the Notes on either the conversion or the breach of contract claim. The award of punitive damages of $1 million against Stroma and $168,126 against Homer are supported by the evidence and are not excessive and we affirm. Blumberg shall recover costs on appeal.


GOODING, J.

WE CONCUR:


O'LEARY, P. J.


SCOTT, J.

23